### INDIANA FLORAL COMPANY and Maryland Insurance Group/Zurich Insurance, Petitioners

v.

### WORKERS' COMPENSATION APPEAL BOARD (BROWN), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 30, 2001.
Decided March 7, 2002.

---

Melody A. Cook, Pittsburgh, for petitioner.

Edward Kuyat, Jr., Johnstown, for respondent.

Before: PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

Judge FRIEDMAN.

Indiana Floral Company and Maryland Insurance Group/Zurich Insurance (together, Employer) petitions for review of

two orders of the Workers' Compensation Appeal Board (WCAB): (1) an April 22, 1999 order reversing the decision of a workers' compensation judge (WCJ) to deny Evelyn J. Brown's (Claimant) reinstatement and penalty petitions and remanding for a determination of the appropriate penalty to be assessed against Employer; and (2) a June 28, 2001 order affirming the decision of a WCJ, which, following remand, assessed a fifty-percent penalty against Employer on past-due disability benefits. We vacate and remand for further proceedings in part and affirm in part.

Claimant was working for Employer as a general clerk when, on July 27, 1988, she fell down seven to ten steps, injuring her right knee and back. (WCJ Anna Marie Mullen's (WCJ Mullen) Findings of Fact of 4/20/92, Nos. 9, 10; R.R. at 92a.) Claimant received total disability benefits for the injuries pursuant to a Notice of Compensation Payable (NCP) at the rate of $125.67, based on an average weekly wage of $131.77. (WCJ Mullen's Findings of Fact of 4/20/92, No. 2.)

On June 20, 1989, Employer filed a suspension petition, alleging that Claimant was able to return to gainful employment. (WCJ Mullen's Findings of Fact of 4/20/92, No. 3.) Employer also filed a petition for review of the NCP, alleging that medical bills submitted for the treatment of Claimant's left knee were not related to the work accident. (WCJ Mullen's Findings of Fact of 4/20/92, No. 6.) Claimant filed answers denying the allegations in the petitions, (WCJ Mullen's Findings of Fact of

4/20/92, Nos. 4, 7), and hearings were held before WCJ Mullen.

Based on the evidence presented at the hearings, WCJ Mullen concluded that Employer failed to meet its burden of proof for the suspension petition because Employer did not show that Claimant was able to return to her pre-injury job or that light-duty work within Claimant's restrictions was available to Claimant. With regard to the review petition, WCJ Mullen concluded that Employer did not satisfy its burden of proving that the treatments to Claimant's left knee were unrelated to the work incident.[1] (WCJ Mullen's Conclusions of Law of 4/20/92, Nos. 2, 3.) Consequently, in an April 20, 1992 order, WCJ Mullen dismissed Employer's petitions and directed Employer and its insurance carrier at the time, Maryland Casualty Company, to pay any and all reasonable medical expenses incurred as a result of Claimant's July 27, 1988 injuries, including medical expenses for Claimant's left knee.

In a September 10, 1992 Supplemental Agreement, the parties agreed that Claimant's July 27, 1988 injuries had resolved into permanent partial disability; specifically, that as of September 4, 1992, Claimant was able to return to work at an average weekly wage of $34.27 per week, reducing her workers' compensation benefits to the partial disability rate of $65.00 per week for 500 weeks. (R.R. at 98a.) On September 11, 1992, the WCAB granted Claimant's commutation petition, filed pursuant to section 316 of the Workers' Compensation Act (Act),[2] commuting her

---

1. WCJ Mullen based her decision on the credible medical testimony of Claimant's doctors, Drs. Sotos and Butterfield, that Claimant's left knee was injured in the fall at work, rejecting the contrary testimony of Employer's doctor, Dr. Casale. Thus, WCJ Mullen found that the treatments to Claimant's left knee were related to the July 27, 1988 work

injuries. (WCJ Mullen's Findings of Fact of 4/20/92, Nos. 15–16, 23–24.)

2. Section 316 of the Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 604, provides that:

The compensation contemplated by this article [77 P.S. § 411 et seq.] may at any time

partial disability benefits into one payment of $32,500.00. (R.R. at 99a–100a.)

 On January 9, 1995, Claimant filed a penalty petition pursuant to sections 430(b) [3] and 435(d) [4] of the Act, arguing that Employer failed to pay medical expenses that Claimant incurred for the treatment of her left knee injury. Then, on June 27, 1995, Claimant filed a reinstatement petition pursuant to section 413(a) of the Act,[5] arguing that, as of June 14, 1995, her disability increased from partial to total disability due to surgery performed on her left knee.[6] (WCJ Francis

J. Desimone's (WCJ Desimone) Findings of Fact of 1/16/98, No. 1; R.R. at 7a.) Employer filed an answer to each petition, denying the allegations therein. (WCJ Desimone's Findings of Fact of 1/16/98, No. 2; R.R. at 5a.) Hearings on Claimant's penalty and reinstatement petitions were held before WCJ Desimone from April 1995 through April 1997.

At hearings on April 20, 1995, August 21, 1995 and June 18, 1996, Claimant testified on her own behalf in support of the penalty and reinstatement petitions, describing three different surgical proce-

---

be commuted by the [WCAB], at its then value when discounted at five per centum interest, with annual rests, upon application of either party, with due notice to the other, if it appear that such commutation will be for the best interest of the employe ... and that it will avoid undue expense or undue hardship to either party....

3. Section 430(b) of the Act, 77 P.S. § 971(b), provides that:
 Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas shall be subject to a penalty as provided in section 435....

4. Section 435(d) of the Act, 77 P.S. § 991(d), provides that:
 (d) The department, the [WCAB], or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
 (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

5. Section 413(a) of the Act, 77 P.S. § 772, provides that:

A [WCJ] ... may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its [WCJ], upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased....

6. Commutation of benefits, the present payment of future benefits in a lump sum, are permitted under section 316 of the Act, 77 P.S. § 604. *Yeager v. Workmen's Compensation Appeal Board (Schneider, Inc.)*, 657 A.2d 1372 (Pa.Cmwlth.), *appeal denied*, 542 Pa. 682, 668 A.2d 1142 (1995). Generally, commutation of workers' compensation benefits settles the obligations of parties relating to the disability at issue. *Id.* However, a claimant can petition to reinstate benefits pursuant to section 413(a) of the Act; 77 P.S. § 772, on the basis of an increase in disability from partial to total, as long as the petition is filed within three years of the commutation. *Mason v. Workmen's Compensation Appeal Board (Acme Markets)*, 156 Pa.Cmwlth.10, 625 A.2d 1271 (1992). In a petition for reinstatement of total disability benefits, the claimant must show that his or her disability has increased or recurred since the date of the prior agreement and that his or her physical condition has actually changed. *Hartner v. Workmen's Compensation Appeal Board (Phillips Mine & Mill, Inc.)*, 146 Pa.Cmwlth.167, 604 A.2d 1204, *appeal denied*, 531 Pa. 662, 613 A.2d 1210 (1992).

dures performed on her left knee.[7] Claimant also submitted the deposition testimony of Paul D. Burton, D.O., the board-certified orthopedic surgeon who performed Claimant's three surgeries. (WCJ Desimone's Findings of Fact of 1/16/98, No. 8.) Dr. Burton testified that osteoarthritis and post-traumatic arthritis, both related to Claimant's 1988 work injuries, caused Claimant's left knee problems. (WCJ Desimone's Findings of Fact of 1/16/98, No. 11.)

In opposition to the penalty and reinstatement petitions, Employer submitted the deposition testimony of Jon B. Tucker, M.D., a board-certified orthopedic surgeon. (WCJ Desimone's Findings of Fact of 1/16/98, No. 8.) Basing his opinion on various factors, Dr. Tucker testified that Claimant's left knee problems, caused by varus osteoarthritis, were related to a bilateral congenital bowlegged deformity, not to her work injuries.[8] (WCJ Desimone's Findings of Fact of 1/16/98, Nos. 11, 13.)

WCJ Desimone credited Dr. Tucker's testimony with regard to Claimant's left knee problems.[9] Based on that credible testimony, WCJ Desimone determined that Claimant developed varus osteoarthritis in her knees because of her congenital bowlegged condition. Thus, although WCJ Desimone found that Claimant has been totally disabled since June 14, 1995 because of her left knee surgeries, he held that Claimant's total disability was not related to her work injuries. (WCJ Desimone's Findings of Fact of 1/16/98, Nos. 13, 14.) WCJ Desimone further concluded that WCJ Mullen's April 20, 1992 decision denying Employer's suspension and review petitions, wherein WCJ Mullen found that Claimant's left knee injury was work-related, did not extend to Claimant's penalty and reinstatement petitions, in which Claimant's current left knee problems and disability were at issue. Having determined that Claimant failed to meet her burden of proving a causal relationship between her original injuries and the medical expenses and total disability connected to her knee problems, (WCJ Desimone's Conclusions of Law of 1/16/98, Nos. 1, 2), WCJ Desimone dismissed Claimant's penalty and reinstatement petitions.

Claimant appealed to the WCAB, which reversed WCJ Desimone's decision. The WCAB reasoned that because "Claimant's disability and medical bills appear to be obviously related to a work injury, [Employer] has the burden to show otherwise," (WCAB's decision of 4/22/99 at 3), and, thus, WCJ Desimone erred in holding that Claimant had the burden of showing that the medical expenses for her left knee were related to the work injuries. Further, the WCAB noted that, because there was a prior controlling determination that

---

7. Claimant testified that, on April 6, 1994, she underwent a high tibial osteotomy, during which hardware was placed in her left knee; this hardware was removed during a second procedure on June 14, 1995. Finally, on June 3, 1996, Claimant's left knee was replaced during surgery. (WCJ Desimone's Findings of Fact of 1/16/98, No. 7.)

8. Dr. Tucker based his opinion on his review of x-rays of Claimant's knees taken between 1989 and 1994, Claimant's osteotomy on April 6, 1994, his own knowledge and experience as to Claimant's congenital condition

and to the fact that Claimant's left knee symptoms did not occur until 1990, about one and one half years after the work injuries. (WCJ Desimone's Findings of Fact of 1/16/98, No. 11.)

9. In rejecting Dr. Burton's contrary testimony, WCJ Desimone concluded that Dr. Burton missed the problem because of Claimant's severe left knee complaints and because he was not provided with the x-ray history that was provided to Dr. Tucker. (WCJ Desimone's Findings of Fact of 1/16/98, Nos. 12, 13.)

Claimant's left knee injury was work-related, WCJ Desimone erred in allowing Employer to collaterally attack that determination. Finally, the WCAB concluded that a penalty must be assessed against Employer because "where an employer contests medical bills on causation and loses, the WCJ must award a penalty." (WCAB's decision of 4/22/99 at 3.) Consequently, the WCAB issued the April 22, 1999 order reinstating Claimant's total disability, granting medical benefits and remanding the case to WCJ Desimone for the purpose of assessing penalties against Employer. On June 8, 1999, the WCAB denied Employer's request for supersedeas.[10] (R.R. at 325a.)

On remand, WCJ Desimone not only considered the appropriate penalty for Claimant's January 1, 1995 penalty petition, but also held hearings on an August 2, 1999 penalty petition filed by Claimant.[11] (WCJ Desimone's Findings of Fact of 1/12/00, No. 1.) Following the hearings,

WCJ Desimone concluded that Employer became obligated to pay Claimant disability benefits as of June 8, 1999, when the WCAB denied Employer's request for supersedeas. Finding that Employer did not issue Claimant a check until October 11, 1999, WCJ Desimone concluded that Employer's four-month delay in initiating disability payments was excessive and unreasonable and in violation of the Act. (WCJ Desimone's Conclusions of Law of 1/12/00, No. 1.) Thus, pursuant to section 435(d)(i) of the Act, WCJ Desimone assessed a fifty-percent penalty against Employer. Further, WCJ Desimone determined that Employer did not have a reasonable basis to contest payment of the disability benefits, (WCJ Desimone's Conclusions of Law of 1/12/00, No. 3), and assessed counsel fees against Employer.[12] However, WCJ Desimone concluded that Claimant did not meet her burden of proof in regard to the medical bills,[13] (WCJ Desimone's Conclu-

10. Employer then filed a petition for review with this court; however, the parties stipulated that the petition for review should be quashed and the case remanded pursuant to the WCAB's April 22, 1999 order. (R.R. at 383a.) In a June 14, 1999 order, upon consideration of the parties' stipulation and the WCAB's order for remand, which was an unappealable interlocutory order, this court dismissed Employer's petition for review. (R.R. at 382a.)

11. In the August 2, 1999 penalty petition, Claimant argued that Employer failed to pay disability benefits and medical bills, as ordered by the WCAB in its April 22, 1999 decision, and to reimburse costs incurred during the prior litigation. Claimant also requested that counsel fees be assessed against Employer. (WCJ Desimone's Findings of Fact of 1/12/00, No. 1.)

12. Employer paid Claimant $4,423.58 for her past due disability benefits as well as counsel fees of $1,105.90, for a total of $5,529.48. WCJ Desimone determined the reason offered for the four month delay, that Employer's insurer was in the process of relocating, was

not sufficient because the insurer did not include its obligation to Claimant in its relocation plans, (WCJ Desimone's Findings of Fact of 1/12/00, No. 5); therefore, WCJ Desimone assessed Employer $2,764.74, which was fifty percent of $5,529.48. Twenty percent of $2,764.74, or $552.95, was assessed as counsel fees.

13. In regard to the medical bills, WCJ Desimone determined that, although Employer's attorney agreed that Claimant's medical bills should be paid, Claimant did not submit a clear listing of injury-related expenses, or any medical reports or records. (WCJ Desimone's Findings of Fact of 1/12/00, No. 6.) Specifically, WCJ Desimone indicated that there were bills submitted that were impossible to evaluate: from Center for Orthopedic & Sports Medicine for what appeared to be work and non-related work injuries; payments to "Center for Orth," for treatment of conditions that did not appear to be work injury related; bills from Drs. Parks and Jacobson, which state diagnoses of "LS strain, Th & LS, bronchitis (not related to comp), DJD, osteo-arthritis, chronic (unreadable) and

sions of Law of 1/12/00, No. 2), and, thus, dismissed the medical bills portion of the two penalty petitions.[14]

Claimant and Employer filed cross appeals with the WCAB, which affirmed the decision of WCJ Desimone in a June 28, 2001 order.[15] Employer now petitions this court for review of both the April 22, 1999 and June 28, 2001 orders of the WCAB.[16]

■ In regard to the April 22, 1999 WCAB decision and order, Employer first argues that, because Dr. Tucker's testimony constitutes substantial, credible competent evidence that Claimant's knee surgeries and subsequent total disability were not related to her work injuries, Claimant was not entitled to total disability benefits or payment of medical bills relating to the surgeries, and the WCAB erred in concluding otherwise. Although WCJ Desimone believed Dr. Tucker's testimony, we do not agree with WCJ Desimone's finding that Dr. Tucker's testimony was *competent* to support the denial of benefits to Claimant based on a lack of causal connection between Claimant's left knee problems and her work injuries.

■ "[W]here the foundation for the medical evidence is contrary to the established facts in the record, or is based on assumptions not in the record, the medical opinion is valueless and not competent." *AT & T v. Workers' Compensation Appeal Board (Hernandez),* 707 A.2d 649, 653 (Pa. Cmwlth.1998). Here, Dr. Tucker opined that Claimant's left knee problems were *never* caused by her work injuries; rather, the problems always stemmed from Claimant's bowlegged condition. Specifically, Dr. Tucker testified, "All of this relates back to [Claimant's] congenital bowlegged deformity." (R.R. at 281a.) "[T]he problem with [Claimant's] knee was completely not work-related." (R.R. at 283a.) Thus, Dr. Tucker's testimony was directly contrary to a fact that was adjudicated in WCJ Mullen's 1992 decision; that is, the work-relatedness of the left knee injury. Further, Dr. Tucker's testimony was contrary to Employer's admission in the 1992 commutation stipulation that Claimant's left knee injury was work-related. (R.R. at 101a.) Consequently, Dr. Tucker's testimony was not competent to establish that Claimant's knee condition was not work-related where it already has been determined, as a matter of law, that Claimant's knee injury was work-related.[17]

Because WCJ Desimone's determination that Claimant's doctor was not credible was based on the incompetent testimony of Dr. Tucker, we vacate the April 22, 1999 order of the WCAB and remand to the WCAB to remand to the WCJ to make necessary credibility determinations with regard to whether Claimant's knee surgeries resulted from the work-related injuries

somatic dysfunction." (WCJ Desimone's Findings of Fact of 1/12/00, No. 6.)

14. Employer filed a request for supersedeas, which the WCAB denied in a February 23, 2000 order. (R.R. at 415a.)

15. Employer filed an additional request for supersedeas, which the WCAB denied in an August 22, 2001 order. (R.R. at 426a.)

16. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

17. The parties both agree that the surgeries were necessitated by Claimant's left knee condition. The only dispute is the cause of Claimant's arthritic knee condition: whether Claimant's osteoarthritis was caused by a congenital bowlegged condition, as Dr. Tucker testified, or whether Claimant has osteoarthritis and post-traumatic arthritis as a result of her work injuries, as Dr. Burton testified.

and without consideration of Dr. Tucker's testimony. In the event that the WCJ concludes that Claimant is entitled to total disability and medical benefits, the WCJ should receive the necessary testimony or evidence regarding the relatedness of the medical bills.

 With respect to the WCAB's June 28, 2001 decision on the penalty petitions, Employer argues that its delay in initiating disability benefits was not unreasonable and excessive so as to warrant a fifty-percent penalty under sections 430(b) and 435(d) of the Act, 77 P.S. §§ 971(b) and 991(d). We disagree that the penalties award was improper.

In this case, Employer was obligated to pay Claimant disability benefits once Employer's request for supersedeas was denied; only a grant of supersedeas relieves an employer of that obligation. *See Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corp.)*, 676 A.2d 690 (Pa.Cmwlth.1996), *appeal denied*, 546 Pa. 658, 684 A.2d 559 (1996). Thus, WCJ Desimone properly determined that a violation of the Act had occurred when Employer did not begin paying Claimant's benefits after Employer's request for supersedeas was denied on June 8, 1999. Moreover, because Employer admittedly made no payments until October of 1999, WCJ Desimone determined that a fifty-percent penalty was warranted by the four-month delay.[18] WCJ Desimone considered and rejected as invalid Employer's reason for the delay. We conclude that WCJ Desimone did not abuse his discretion in doing so and that the

WCAB did not err in upholding the assessment of penalties.[19] Accordingly, we affirm the WCAB's June 28, 2001 order.

## ORDER

AND NOW, this 7th day of March, 2002, the order of the Workers' Compensation Appeal Board (WCAB), dated April 22, 1999, is hereby vacated and remanded for further proceedings in accordance with the foregoing opinion. The order of the WCAB, dated June 28, 2001, is hereby affirmed.

Jurisdiction relinquished.

---

**18.** Section 435(d) of the Act gives the WCJ the authority to impose up to a fifty-percent penalty in the case of unreasonable or excessive delays in paying disability benefits. The imposition of a penalty and the amount of the penalty are discretionary and, absent an abuse of discretion by the WCJ or the WCAB, will not be overturned on appeal. *Crucible,*

*Inc. v. Workers' Compensation Appeal Board (Vinovich),* 713 A.2d 749 (Pa.Cmwlth.1998).

**19.** We note that Employer does not challenge the WCJ's assessment of counsel fees for an unreasonable contest, and, therefore, we need not address the issue. *See* Pa. R.A.P. 1513(a).