Norbert **WIECZORKOWSKI**, Petitioner

v.

**WORKERS' COMPENSATION
APPEAL BOARD (LTV
STEEL), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2005.

Decided April 7, 2005.

---

Diana Jacobs, Pittsburgh, for petitioner.

Dale A. Cable, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, LEAVITT, Judge.

OPINION BY Judge LEADBETTER.

Claimant Norbert Wieczorkowski petitions for review of the order of the Workers' Compensation Appeal Board (Board), which affirmed the order of the Workers' Compensation Judge (WCJ) granting the termination petition filed by employer LTV Steel. The crucial issue on appeal is whether employer is estopped from seeking to terminate benefits because the parties previously executed a supplemental agreement and stipulation providing that claimant's disability had resolved into a *permanent* partial disability and employer would remain responsible for all causally related medical expenses. We affirm.

In 1984, claimant sustained a work injury that was described in the subsequent Notice of Compensation Payable (NCP) as

a right knee strain resulting from a slip and fall on a wet floor; claimant received weekly total disability benefits in the amount of $320.00. See NCP, Bureau Ex. 1. In 1997, as a prerequisite to seeking a commutation of benefits,[1] the parties entered into a supplemental agreement which provided that claimant's work injury had resolved into a permanent partial disability. Specifically, the agreement provided:

> Although claimant remains totally disabled in terms of his overall physical condition, his disability in terms of the work-related injury of April 4, 1984 has resolved itself into a partial disability permanent in nature. The claimant was earning an average weekly wage of $622.47 at the time of his injury, and has now developed an earning capacity of $394.47 a week, thereby resulting in a wage differential of $228.00 a week, and a partial disability rate of $152.00 a week.

See Supplemental agreement dated July 8, 1997 (included in the Stipulation), Bureau Ex. 1. See also Stipulation, Bureau Ex. 1. In addition, the parties agreed in the supplemental agreement that employer would remain responsible for all causally related medical expenses in accordance with the Workers' Compensation Act (Act).

Claimant subsequently filed a petition for commutation seeking a lump sum payment of $76,000.00, representing the full amount of future partial disability benefits due and owing under the supplemental agreement.[2] On July 10, 1997, the petition for commutation was granted with the pro-

viso that employer remain responsible for any reasonable and necessary medical treatment causally related to claimant's work injury.

In March 2001, employer filed a termination petition, alleging that claimant's disability related to the April 4, 1984, work injury had ceased without any residual problems or restrictions. In support of its termination petition, employer introduced into evidence the deposition testimony of Dr. William D. Abraham, an orthopedic surgeon who performed an independent medical examination of claimant on March 14, 2001. Based upon his examination and a review of claimant's medical history, Dr. Abraham opined that claimant had advanced arthritis of the right knee and a moderately advanced degenerative change in the left knee. Importantly, Dr. Abraham opined that claimant had fully recovered from what appeared to have been a soft tissue injury to his right knee. The doctor further stated that claimant's complaints of pain were consistent with the naturally progressive degenerative process, which he believed pre-dated claimant's work injury. Dr. Abraham further testified within a reasonable degree of medical certainty that claimant had recovered from his 1984 work injury without any residuals.

In opposition to employer's petition, claimant testified on his own behalf and introduced into evidence the deposition of Dr. Michael Levine, an orthopedic surgeon who began treating claimant in 1989. The WCJ found Dr. Abraham's opinion to be

---

1. A commutation constitutes the present payment of future compensation benefits in one lump sum. *Indiana Floral Co. v. Workers' Comp. Appeal Bd. (Brown)*, 793 A.2d 984, 987 n. 6 (Pa.Cmwlth.2002). Claimant sought a commutation pursuant to Section 316 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 604.

However, both the Board and the WCJ have jurisdiction over commutation petitions. *See* Sections 316 and 424 of the Act, 77 P.S. §§ 604, 791. *See also* 7 David B. Torrey & Andrew E. Greenberg, Workers' Compensation Law and Practice § 6:91 (2002).

2. Or, $152.00 per week for 500 weeks.

credible and persuasive, found claimant incredible in part and rejected the opinion of Dr. Levine that claimant's degenerative arthritis and bone-on-bone articulation of the right knee were related to the 1984 injury. Based upon Dr. Abraham's credible opinion, the WCJ found that claimant had fully recovered from his 1984 work injury as of March 14, 2001. Accordingly, the WCJ granted employer's termination petition. On appeal, the Board affirmed. Notably, the Board concluded that the parties' supplemental agreement did not bar employer from seeking to terminate benefits. The present appeal followed.

■ Claimant's first argument is that the July 1997 supplemental agreement, wherein the parties agreed that the work-related disability had resolved into a permanent partial disability, precludes employer from seeking to terminate its responsibility for payment of medical expenses. According to claimant, while employer may always challenge the reasonableness, necessity or causal relationship of any medical treatment, it cannot seek to terminate its ongoing responsibility to pay for medical expenses by contending that claimant has fully recovered. Employer contends, however, that a similar argument was rejected by this court in *City of Pittsburgh v. Workers' Compensation Appeal Board (Wiefling)*, 790 A.2d 1062 (Pa.Cmwlth.2001).

■ We begin by noting that Section 413(a) of the Act provides in pertinent part:

A *workers' compensation judge* designated by the department, *may at any time,* modify, reinstate, suspend, or *terminate* a notice of compensation payable, *an original or supplemental agreement* or an award of the department or its workers' compensation judge, *upon petition filed by either party* with the department, *upon proof that the disability of an injured employe has* increased, decreased, recurred or has temporarily or *finally ceased.* ...

77 P.S. § 772 (emphasis added). We construe the plain unambiguous language of Section 413(a) to permit the termination of benefits recognized in a supplemental agreement at any time upon proof that the claimant's work-related disability has ceased. As our Supreme Court concluded in *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 534 Pa. 327, 632 A.2d 1302 (1993), the principle of res judicata or issue preclusion[3] only precludes a challenge to a claimant's current disability status where the claimant's condition is clearly irreversible, such as the case of a progressive occupational disease.[4] Specifically, the Supreme Court opined:

**3.** In general, broad *res judicata,* also referred to as issue preclusion or collateral estoppel, "forecloses relitigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *Hebden,* 534 Pa. at 330, 632 A.2d at 1304 (citation omitted).

**4.** In *Hebden,* the claimant was awarded partial disability benefits for occupationally acquired pulmonary lung disease (coal workers' pneumoconiosis), a progressive disease. Thereafter, the employer sought to terminate benefits, contending that the claimant was no longer disabled from the pulmonary disease. The employer offered the testimony of two

experts. One expert opined that the claimant did not currently have pneumoconiosis, which, he admitted on cross-examination, also indicated that the claimant did not have the condition when benefits were originally awarded. The other expert also opined that the claimant did not have pneumoconiosis, but rather suffered from a non-occupational respiratory ailment. The WCJ credited employer's witnesses, finding that the claimant's disability ceased to exist and that *res judicata* did not bar the termination of benefits. The order was affirmed on appeal. The Supreme Court reversed, opining that *res judicata* prevents the employer from relitigating in a ter-

[Section 413 of the Act, 77 P.S. § 772,] expressly provides that an award may be terminated based upon changes in the employee's disability. But that raises the logical question of whether an employee's disability is changeable in a given case. If it is, an employee's condition may be re-examined at a later time to see if he is still disabled or not. If it is not, an attempt to re-examine the employee's condition is merely a disguised attempt to relitigate what has already been settled.

*Id.* at 331, 632 A.2d at 1304 (emphasis in original).

In *City of Pittsburgh,* this court relied in part on Hebden to conclude that supplemental agreements acknowledging a permanent partial disability did not preclude a subsequent termination of benefits. The two claimants involved in that case originally received benefits under what is commonly known as the Heart and Lung Act [5] for work-related injuries. The claimants subsequently entered into supplemental agreements with their employer, the City of Pittsburgh, recognizing that the claimants were permanently disabled. Neither agreement provided, however, that the claimant's condition was irreversible. Each claimant then began receiving benefits pursuant to the Workers' Compensation Act. Thereafter, the City sought to terminate each claimant's benefits on the basis that the claimants had fully recovered from the work-related injury. In each case, the WCJ concluded that the supplemental agreement precluded the employer from seeking to terminate benefits. This court disagreed, concluding that res judicata did not bar the employer from litigating the issue of the claimants' disability. Although we noted that the phrase "permanently disabled" in the respective supplemental agreements referred to the claimants' status under the Heart and Lung Act, not to their status for workers' compensation purposes, we also noted that:

> This Court [has concluded] that a finding of a permanent disability is not the equivalent of a finding that the injury is irreversible.
>
> In the case before us, the supplemental agreements entered into by Employer and Claimants provided that Claimants were permanently disabled. The supplemental agreements did not provide that Claimants' conditions were irreversible. We therefore conclude that Employer is not barred by the principles of res judicata from litigating the issue of Claimants' disability.

*City of Pittsburgh,* 790 A.2d at 1067.[6]

While City of Pittsburgh did not definitively determine the effect of a stipulation of permanency under the Workers' Compensation Act rather than the Heart and Lung Act, we conclude that the plain language of Section 413, as well as the rationale of the courts in Hebden and *City of Pittsburgh,* commands the conclusion that neither the parties' supplemental agreement, nor the stipulation, both of which

---

mination petition the original medical diagnosis underlying the original award of benefits. Noting that the United States Supreme Court had determined in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), that coal workers' pneumoconiosis is irreversible, our Supreme Court found that the employer's medical evidence failed to rebut the presumption that pneumoconiosis is irreversible.

**5.** Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–38. In order to terminate benefits under the Heart and Lung Act, there must be a determination that the claimant's disability is permanent.

**6.** *See also Hebden.*

provide that the claimant's disability had resolved into a permanent partial disability, precludes employer from seeking to terminate medical benefits on the basis that claimant has fully recovered from the work injury. The NCP described claimant's injury as a right knee strain, and there is nothing to suggest that such an injury is irreversible.[7]

■ The controlling factor, however, is not an issue of semantics but a fundamental principle underlying the distinction between Hebden and City of Pittsburgh. Neither claimants and employers, nor even expert witnesses and WCJs, can predict the future with certainty. Agreements between the parties and adjudications can incorporate only the current best estimates of the course a disease or physical impairment will take, or how such conditions may be affected by future medical developments. Accordingly, the general rule is that if the original assumptions turn out to be wrong, either party may seek review to show that what was expected to be a permanent partial disability has resolved or has worsened into a total disability.[8] Nonetheless, if medical science deems the condition to be irreversible at the time a party seeks to challenge the prior stipulation or adjudication, no review may be had. In other words, when a party seeks to challenge the prior stipulation or adjudi-

cation, we must look to two distinct time periods. First we look to the relevant agreement or decision to determine the nature of the physical impairment from which claimant suffered, and in accordance with Hebden, the nature of that condition may not be collaterally attacked. It is from the time perspective of the later petition, however, that we determine whether the established condition is one that is irreversible,[9] and this determination dictates whether the benefits previously set may be altered. Consequently, we conclude that the WCJ had the authority to grant employer's termination petition because claimant's condition was not one that was irreversible.

■ Claimant also contends that employer's medical evidence is insufficient to support the WCJ's conclusion that he had fully recovered from his work injury. According to claimant, his work injury was not limited to his right knee but also included his back, left wrist and neck. Further, with regard to his right knee, claimant maintains that the WCJ should have relied on the testimony of Dr. Levine, his treating physician, who opined that claimant's arthritis was directly related to his April 4, 1984, work injury.

■ It is well-established that "[t]he WCJ, as the ultimate factfinder, is the sole

---

7. It may also be noted that the parties' stipulation in this case that claimant was permanently partially disabled, by definition, relates only to the impairment of his earning capacity. For this, employer paid in full, and the termination petition does not, and cannot, in any way affect the finality of that agreement and payment. The parties did not stipulate that claimant's medical condition was irreversible, and employer in this petition is simply arguing that it has no further obligation under its agreement to pay work-related medical expenses because there is no longer any work-related medical condition.

8. Indeed, it is already well-settled that pursuant to Section 413(a), a claimant can seek to reinstate benefits following a commutation on the basis of an increase in disability from partial to total. See generally Indiana Floral Co., 793 A.2d at 987 n. 6.

9. As Justice, now Chief Justice, Cappy noted in his concurring opinion in Hebden, "there may be circumstances where a once irreversible disease may, due to advances in medical science, become reversible and, in such event, an employer should have the right to establish that fact at a subsequent workmen's compensation termination hearing." 534 Pa. at 332, 632 A.2d at 1305.

arbiter of the credibility and weight of the evidence." *Rissi v. Workers' Comp. Appeal Bd. (Tony DePaul & Son)*, 808 A.2d 274, 278 (Pa.Cmwlth.2002), *appeal denied*, 573 Pa. 687, 823 A.2d 146 (2003). This court cannot reweigh the evidence or substitute its judgment for the credibility determinations of the WCJ. *Id.* at 279. "The WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *McNulty v. Workers' Comp. Appeal Bd. (McNulty Tool & Die)*, 804 A.2d 1260, 1263 n. 2 (Pa.Cmwlth.2002), *appeal denied*, 574 Pa. 756, 830 A.2d 977 (2003).

 Notwithstanding the authority of the WCJ over questions of weight and credibility of evidence, the WCJ's findings must still be supported by substantial evidence of record. Substantial evidence is relevant evidence that a "reasonable person might accept as adequate to support a conclusion." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa.Cmwlth.1998). In reviewing a decision for substantial evidence, the court must view the evidence in the light most favorable to the party who prevailed before the WCJ and draw all reasonable inferences from the evidence in favor of the prevailing party. *Id.*

Here, the WCJ detailed her reasons for accepting Dr. Abraham's opinion over that of Dr. Levine and, based upon Dr. Abraham's opinion, concluded that claimant had fully recovered from his work-related injury. We have reviewed Dr. Abraham's testimony and conclude that it constitutes substantial evidence to support the WCJ's finding of a full recovery. The WCJ's credibility determination in this regard is simply not subject to review. In addition, we note that, inasmuch as the NCP limited claimant's April 4, 1984 work injury to a right knee strain and the WCJ rejected any evidence to the contrary as not credi-

ble, the burden never shifted to employer to prove that any other work-related condition had ceased. *See generally Cerro Metal Prod. Co. v. Workers' Comp. Appeal Bd. (Plewa)*, 855 A.2d 932 (Pa.Cmwlth. 2004), *appeal denied*, —— Pa. ——, 868 A.2d 1202 (2005).

In view of the foregoing, we affirm the order of the Board.

### ORDER

AND NOW, this 7th day of April, 2005, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.

Concurring Opinion by Judge PELLEGRINI.

I concur with the decision reached by the majority because Section 413(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772, authorizes a Workers' Compensation Judge to terminate supplemental agreements upon petition and upon proof that the work-injury has finally ceased. I write separately to emphasize that the agreement at issue in this case was merely a supplemental agreement and not a true "Compromise & Release" as contemplated by Section 449 of the Workers' Compensation Act, 77 P.S. § 1000.5. Had this case involved a true compromise and release, only allegations of fraud, mutual mistake, or the like would justify opening the settlement and modifying the parties' respective obligations.