**Cleo MILNER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MAIN LINE ENDOSCOPY CENTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 5, 2010.

Decided May 18, 2010.

Michael Bauerle, Philadelphia, for petitioner.

Lisa A. Miller, Exton, for respondent.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Cleo Milner (Claimant) petitions for review of the October 29, 2009, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a workers' compensation judge (WCJ) granting Claimant's claim petition for the closed period of December 27, 2006, until October, 23, 2007, and terminating benefits thereafter. We affirm.

In May of 2007, Claimant filed a claim petition, alleging that she sustained a repetitive use injury to her left middle finger on December 27, 2006, as a result of performing her duties as a technician for Main Line Endoscopy Center (Employer). Claimant sought ongoing disability benefits, medical costs and counsel fees. (R.R. at 3a–4a.) Employer filed an answer denying the material allegations in Claimant's claim petition, and hearings on the matter were held before the WCJ.

Testifying at the June 28, 2007, hearing, Claimant said that, for approximately five years, she had worked as a technician for Employer, assisting doctors doing colonoscopies and endoscopies. Describing her various work duties, Claimant stated that, during the procedures, she removed polyps using a forceps, which involved repetitive, forceful grasping activity with her left hand. She also cleaned scopes, which required her to push knobs by bending her left middle finger back toward her palm.

Claimant testified that she first began having pain in her left middle finger between 2003 and 2004, but the pain increased over time, especially when using the forceps, and, because she was unable to keep up with the speed of the procedures, she was assigned to clean scopes full time as of July 24, 2006. Claimant explained that, by September 2006, the problem had gotten to the point where she could no longer bend her finger, her left hand would swell up to her wrist and she was in constant pain. Claimant testified that she finally left work on December 27, 2006, and underwent surgery on her left middle finger on December 29, 2006. As of the date of her testimony, Claimant testified that she felt unable to return to her prior duties because she still could not bend her middle finger completely and it still swelled. (WCJ's Findings of Fact, Nos. 3–6.)

Claimant also presented the deposition testimony of Scott H. Jaeger, M.D., a board-certified orthopedic surgeon with added qualifications in hand surgery, who examined Claimant one time on June 12, 2007, at the request of Claimant's attorney. Dr. Jaeger stated that he obtained a

history from Claimant and reviewed the records from her treating physicians. Dr. Jaeger testified that, during the examination, Claimant exhibited pain, swelling and loss of motion in her left middle finger, which involved all three joints of the finger; Claimant also had decreased grip and pinch strength. Dr. Jaeger diagnosed Claimant with end-stage flexor tenosynovitis of the left hand. Dr. Jaeger explained that Claimant's work activities, during which she overused her left hand, caused this cumulative trauma injury, which culminated on December 27, 2006, her last day of work. He opined that Claimant was unable to return to her pre-injury job duties because her diagnosis would make it impossible for her to perform those duties. Dr. Jaeger opined further that, at this point, Claimant's condition was irreversible. (WCJ's Findings of Fact, Nos. 10–14.)

Employer presented the deposition testimony of Jack Abboudi, M.D., also a board-certified orthopedic surgeon with added qualifications in hand surgery, who examined Claimant on October 23, 2007, at Employer's request. Dr. Abboudi stated that Claimant provided him with a description of her job duties and a history of her injury; he also reviewed the records related to Claimant's December 2006 surgery, as well as her past medical history. Dr. Abboudi testified that he examined Claimant's finger and determined that her left middle finger problem had resolved; he found the Claimant was able to fully extend all three joints, there was no evidence of any flexion contracture, her tendon function and sensation were normal and she had a full range of motion. Dr. Ab-

boudi diagnosed Claimant with left long finger triggering digit, a kind of tenosynovitis. However, while he did not disagree with Dr. Jaeger's diagnosis, Dr. Abboudi opined that this diagnosis was not related to or caused by Claimant's work activity. Dr. Abboudi further opined that Claimant's condition had been treated successfully with a surgical trigger release. Although Dr. Abboudi did not think that Claimant was capable of performing her work duties at the time she was actively treating for her finger problem, he believed that, because Claimant had the benefit of time, she now was capable of returning to her regular job duties without restrictions. (WCJ's Findings of Fact, Nos. 17–22, 25–28.)

The WCJ credited Claimant's testimony regarding her job duties. (WCJ's Findings of Fact, No. 29.) Further, the WCJ credited Dr. Jaeger's testimony that Claimant sustained a tenosynovitis of the left hand or left middle trigger finger as a result of her work duties, finding Dr. Jaeger more credible than Dr. Abboudi in this regard. (WCJ's Findings of Fact, No. 30.) However, the WCJ found the opinion of Dr. Abboudi credible that, as of the date he examined Claimant on October 23, 2007, Claimant had fully recovered from this condition and could return to work without restrictions. (WCJ's Findings of Fact, No. 31.) Consequently, by decision dated October 14, 2008, the WCJ granted Claimant's claim petition for the closed period between December 27, 2006, and October 23, 2007, terminating benefits thereafter.[1] Claimant appealed to the WCAB, challenging the WCJ's termination of benefits on

1. Claimant began receiving unemployment compensation benefits as of December 27, 2006, her last day of work with Employer, and the WCJ concluded that Employer was entitled to a credit for the amount of unemployment compensation that Claimant had re-

ceived. The WCJ also concluded that Employer had to pay for the costs of Claimant's medical treatment related to the work injury until October 23, 2007, and Employer had to reimburse Claimant $3,000 in litigation costs. (WCJ's Conclusions of Law, Nos. 1–2, 5.)

October 23, 2007. The WCAB affirmed, and Claimant now petitions this court for review.[2]

■ Claimant argues that the WCJ, as affirmed by the WCAB, erred in terminating Claimant's benefits based on Dr. Abboudi's medical opinion. Claimant concedes that expert medical testimony of a claimant's full recovery normally would support a termination of benefits. However, relying on *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302 (1993), Claimant insists that such testimony is legally insufficient to meet Employer's burden in this case because the WCJ specifically credited Dr. Jaeger's testimony that Claimant's work-related flexor tenosynovitis was "irreversible."[3] According to Claimant, this finding imposed the added burden on Employer to rebut the presumption that Claimant's injury was irreversible, a burden Employer failed to satisfy. Thus, Claimant maintains that proper application of *Hebden* to the facts here requires us to reverse the order terminating benefits. We disagree because, in making this argument, Claimant has both misapplied *Hebden* and misstated the facts.

■ Not only is *Hebden* an occupational disease case,[4] but it is a case involving an action by the employer to *terminate* a claimant's benefits, placing the burden of proof on the employer to establish that the claimant's existing, recognized work-related disability has ceased. *Campbell v. Workers' Compensation Appeal Board*

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**3.** In *Hebden*, the claimant *had been awarded* benefits for disability due to coal workers' pneumoconiosis, an irreversible, occupationally acquired lung disease. The employer subsequently filed a termination petition, in support of which it presented expert medical testimony that the claimant did not suffer from pneumoconiosis. Termination initially was granted based on this testimony; however, our supreme court reversed. Concluding that the employer's medical testimony, in effect, reopened the prior determination regarding the claimant's diagnosis, the court held that *res judicata* barred the employer from relitigating that determination in a subsequent termination petition. Moreover, the court recognized that the U.S. Supreme Court previously held that coal workers' pneumoconiosis is irreversible and, because the employer had failed to rebut that presumption, it could not show that the condition had been reversed in the claimant's case.

**4.** Relying on *Wieczorkowski v. Workers' Compensation Appeal Board (LTV Steel)*, 871 A.2d 884 (Pa.Cmwlth.2005), Claimant argues that *Hebden* does not apply solely to occupational disease cases. We disagree that *Wieczorkowski* supports Claimant's argument. In fact, quite the opposite is true.

In *Wieczorkowski*, the claimant sustained a right knee strain, and, in connection with a commutation of benefits, the parties stipulated that this injury resolved into a permanent, partial disability. The employer subsequently filed a termination petition, alleging that the claimant had fully recovered from the work injury. The WCJ credited the employer's evidence of full recovery and terminated the claimant's benefits, concluding that the parties' stipulation of permanency did not preclude such a result. In affirming, this court cited *Hebden* as concluding that the principle of *res judicata* only precludes a challenge to a claimant's current disability status where the claimant's condition is clearly irreversible, such as the case of a *progressive occupational disease*. We recognized the general rule that either party may seek review to show that what was expected to be a permanent partial disability either has resolved or has worsened into a total disability, but, if *medical science* deems the condition to be irreversible at the time a party seeks to challenge the prior stipulation or adjudication, no review may be had.

*(Antietam Valley Animal Hospital)*, 705 A.2d 503 (Pa.Cmwlth.1998). Because the case currently before us is a claim petition proceeding, no work-related injury has yet been recognized; rather, it is the claimant's burden to establish all the necessary elements to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). Moreover, the claimant not only must prove that she has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition proceeding. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Cmwlth.141, 646 A.2d 51 (1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995). If the WCJ feels that the evidence supports a finding of disability only for a closed period, she is free to make such a finding. *Connor v. Workmen's Compensation Appeal Board (Super Sucker, Inc.)*, 155 Pa.Cmwlth.102, 624 A.2d 757, *appeal denied*, 535 Pa. 676, 636 A.2d 635 (1993). That is what the WCJ did here.

■ In a workers' compensation proceeding, the WCJ is the ultimate factfinder and, in that role, is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Wieczorkowski v. Workers' Compensation Appeal Board (LTV Steel)*, 871 A.2d 884 (Pa.Cmwlth.2005). Notwithstanding Claimant's contention that the WCJ here credited Dr. Jaeger's medical opinion in its entirety, it is clear that, although the WCJ accepted Dr. Jaeger's testimony that Claimant sustained a work-related injury on December 27, 2007, she did *not* credit his opinion that the condition was irreversible. Instead, the WCJ credited Dr. Abboudi's testimony that, following surgery, Claimant improved over time and had recovered fully as of October 23, 2007. As the WCAB correctly explained, because

the WCJ credited Dr. Jaeger's testimony that Claimant's injury was work-related, it was appropriate for her to grant the claim petition; further, because the WCJ credited Dr. Abboudi's testimony that Claimant had fully recovered from her work-related injury as of October 23, 2007, it also was appropriate for her to terminate Claimant's benefits as of that date. Because the WCJ acted within her authority in accepting Dr. Abboudi's opinion on the duration of Claimant's work-related disability, we see no error in her determination.

Accordingly, we affirm.

### ORDER

AND NOW, this 18th day of May, 2010, the order of the Workers' Compensation Appeal Board, dated October 29, 2009, is hereby affirmed.