IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Felton Robinson,                          :
                        Petitioner        :
                                          :
        v.                                :    No. 858 C.D. 2019
                                          :    Submitted: November 22, 2019
Workers' Compensation Appeal              :
Board (Liberty Management Services),      :
                        Respondent        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                              FILED: May 1, 2020

        Felton Robinson (Claimant) petitions for review of an adjudication of
the Workers' Compensation Appeal Board (Board) that granted Claimant's claim
petition for benefits under the Workers' Compensation Act (Act)[1] for the closed
period of August 23, 2013, until April 17, 2014.  In doing so, the Board affirmed the
decision of the Workers' Compensation Judge (WCJ) that Claimant fully recovered
as of April 17, 2014, and terminated his benefits as of that date.  Discerning no error,
we affirm the Board.

        Claimant worked for Liberty Management Services, Inc. (Employer) as
a maintenance worker.  On September 24, 2013, Claimant filed a claim petition
alleging that he suffered "lumbar [and] spinal injuries[] and aggravations of prior
condition" as a result of "lifting [and] moving boxes, beds, lockers, etc." at work on
August 16, 2013.  Certified Record (C.R.), Item 2, at 1.  Claimant sought total

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2710.

disability benefits, and Employer filed an answer denying the allegations. The matter was assigned to a WCJ.

Claimant testified in person on December 20, 2013. He stated that he performed minor repairs for a halfway house that Employer manages, including patching walls and replacing tiles. On August 16, 2013, while at work, he was asked to unload boxes weighing 50 to 60 pounds from a delivery truck and then move steel lockers and beds weighing 25 to 50 pounds. As a result, Claimant developed pain in his spine, and his lower back "seemed to stiffen up." Notes of Testimony (N.T.), 12/20/2013, at 21; C.R. Item 24. He also had pain in his right hip, right upper shoulder and neck. Claimant had preexisting "back problems" due to a car accident. N.T. 20. However, he "wasn't really having a problem" until he started moving those items on August 16, 2013. N.T. 20-21.

Claimant stopped working on August 23, 2013. Claimant was later terminated for violating Employer's drug policy. He applied for and was granted unemployment compensation benefits following his termination.

Claimant presented the deposition testimony of George Rodriguez, M.D., who is board certified in physical medicine and rehabilitation and has been Claimant's treating physician for his work injury of August 16, 2013. Dr. Rodriguez diagnosed Claimant with exacerbation of preexisting: cervical strain and sprain; herniation of the cervical spine at multiple levels; and lumbosacral strain and sprain. He also diagnosed new herniations at L2-3 and L3-4 levels. Dr. Rodriguez found lumbosacral radiculopathy at levels of L-4, L-5, and S-1, which was preexisting and aggravated, a protruding disc at T1-2, and radiculopathy co-incidentally and bilaterally at C-5, C-6, and C-7. Dr. Rodriguez opined that the August 16, 2013, work injury aggravated Claimant's preexisting injuries and disabled him from his

job as a maintenance worker. Dr. Rodriguez testified that he is familiar with Claimant's preexisting conditions because he treated him for those injuries.

In opposition to Claimant's claim petition, Employer presented, *inter alia*, the deposition testimony of Scott Epstein, M.D., who is board certified in physical medicine and rehabilitation, as well as in electrodiagnostic medicine. Dr. Epstein performed an independent medical evaluation (IME) on Claimant on April 17, 2014, and issued a report. He took a history of Claimant's August 16, 2013, work injury. Claimant declined to complete the IME questionnaires and did not explain his medications and prior low-back injuries.

Dr. Epstein testified that he reviewed Claimant's medical records from Byrne L. Solberg, M.D., dated September 9, 2013, who performed two electromyographies (EMG) on Claimant. Dr. Solberg's records also documented Claimant's two prior back injuries in 1999 and 2004 and the diagnoses. Dr. Epstein reviewed the two EMG reports dated October 30, 2013, and November 6, 2013, and two magnetic resonance imaging (MRI) reports of Claimant's lumbar spine and cervical spine, performed on September 16, 2013, and October 1, 2013. Dr. Epstein also reviewed Dr. Rodriguez's medical records.

Based upon review of these medical records, Dr. Epstein noted that Claimant had disc protrusions at C4-5, C5-6, and C6-7, an annular tear at L3-4, a disc bulge at L2-3, and radiculopathy at C-5, C-6, and C-7. The lumbar radiculopathy and disc protrusions preexisted the August 16, 2013, work injury. However, on physical examination, Dr. Epstein found no evidence of cervical radiculopathy or cervical disc protrusion. Claimant had "normal strength, though he had some giveaway feigning weakness in his tricep." N.T., 7/24/2014, at 27; C.R.

3

Item 38.  Likewise, Dr. Epstein found no evidence of an active disc bulge, annular tear or radiculopathy in Claimant's lumbar spine on examination.

Claimant rated his back and neck pain as "ten out of ten," N.T., 7/24/2014, at 14, but Dr. Epstein found that this complaint had no objective correlation on examination.  A musculoskeletal exam revealed no atrophy.  A Jamar dynamometer test revealed inconsistent or invalid efforts.  Claimant's neck and back ranges of motion were limited by subjective complaints of pain, but without radiation of symptoms.  There was tenderness to very light palpation throughout Claimant's back and neck.  There was some lumbar muscle tightness, but none in the cervical or thoracic spine.  Dr. Epstein opined that Claimant had fully recovered from the work injury and was capable of returning to his pre-injury job without restriction.

The WCJ credited Claimant's testimony with respect to the August 16, 2013, work injury and his need for treatment as of December 20, 2013, the date he testified in person before the WCJ.  The WCJ also credited Claimant's testimony regarding the extent of his disability following the work injury, but only "as it comports with the testimony of Dr. Epstein."  WCJ Decision, 10/1/2015, at 9, Findings of Fact No. 8; C.R. Item 5.  The WCJ explained that his credibility determination was based, in part, on his "personal viewing of Claimant's demeanor and comportment while testifying live."  *Id.*

The WCJ also credited Dr. Epstein's testimony over Dr. Rodriguez's. He found that Dr. Epstein's testimony regarding the relationship between the work incident and Claimant's complaints and disability was "cogent, clear and convincing."  *Id.* at 9, Finding of Fact No. 9.  Further, Dr. Epstein's opinion was supported by Claimant's medical records. Dr. Epstein pointed out that Claimant's

"unreliable presentation" was not clinically correlated to the diagnostic testing performed on examination. *Id.* The WCJ discredited Dr. Rodriguez's testimony where it conflicted with Dr. Epstein's, noting that while Dr. Rodriguez was "quick to note the new diagnostic findings," he "pushed aside and ignored" Claimant's preexisting positive diagnostic findings. *Id.*

The WCJ granted Claimant's claim petition for the closed period from August 23, 2013, to April 17, 2014, and terminated his benefits thereafter based on a finding of a full recovery.

Both parties appealed to the Board challenging, *inter alia*, the WCJ's credibility determinations and weighing of evidence. The Board affirmed the WCJ's decision to grant Claimant's claim petition for a closed period, holding that the WCJ provided reasonable explanations for his credibility determinations and "his ultimate view of the evidence as a whole." Board Adjudication, 9/27/2016, at 15; C.R. Item 12. The Board modified the WCJ's order to reflect Employer's entitlement to a credit for unemployment compensation received by Claimant during the period in which he was also eligible for workers' compensation disability benefits, and remanded for further proceedings limited to determining Claimant's average weekly wage. On September 6, 2018, the WCJ again granted Claimant's claim petition in part and found that Claimant's average weekly wage was $442.24, with a compensation rate of $398.01. Claimant appealed to the Board and sought issuance of an order making the September 27, 2016, Board order final; the Board did so on July 2, 2019. Claimant now petitions this Court for review of the Board's adjudication.[2]

---

[2] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty*

5

On appeal, Claimant argues that the WCJ's findings of fact are not supported by substantial evidence. The WCJ found that Dr. Epstein reviewed Claimant's "records of prior injuries," WCJ Decision, 10/1/2015, at 4, Finding of Fact No. 4(d), but Dr. Epstein testified that he did not do so. The WCJ found no objective evidence of an injury, but the MRI showed an annular tear. Finally, the WCJ found Claimant fully recovered, but Dr. Epstein testified only that Claimant reached maximum medical improvement.

In a claim petition proceeding, it is the claimant's burden to establish all the necessary elements to support an award. The claimant not only must prove that he has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition proceeding. *Milner v. Workers' Compensation Appeal Board (Main Line Endoscopy Center)*, 995 A.2d 492, 496 (Pa. Cmwlth. 2010).

In a workers' compensation proceeding, the WCJ is the ultimate fact-finder and, in that role, is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Wieczorkowski v. Workers' Compensation Appeal Board (LTV Steel)*, 871 A.2d 884, 889-90 (Pa. Cmwlth. 2005). This Court cannot reweigh the evidence or substitute its judgment for the credibility determinations of the WCJ. *Id*. at 890.

Here, the WCJ detailed his reasons for crediting Dr. Epstein's testimony over that of Dr. Rodriguez and, based upon Dr. Epstein's testimony, concluded that Claimant had fully recovered from his work-related injury. Dr. Epstein testified that his examination of Claimant showed no evidence of cervical radiculopathy or cervical disc protrusion. He also found no evidence of an active

---

*Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

disc bulge, annular tear or radiculopathy in Claimant's lumbar spine. Dr. Epstein testified that Claimant had "normal strength, though he had some giveaway feigning weakness in his tricep." N.T., 7/24/2014, at 27. The WCJ credited Claimant's testimony regarding the extent of his disability following the work injury, but only "as it comports with the testimony of Dr. Epstein." WCJ Decision, 10/1/2015, at 9, Finding of Fact No. 8. The WCJ explained that his determination was based upon his "personal viewing of Claimant's demeanor and comportment while testifying live." *Id.*

Claimant argues that substantial evidence does not support the WCJ's finding that Dr. Epstein reviewed Claimant's "records of prior injuries." WCJ Decision, 10/1/2015, at 6, Finding of Fact No. 4(d). Claimant explains that Dr. Epstein testified that he did not see "records that predated the [August 16, 2013,] incident." N.T., 7/24/2014, at 33. We reject Claimant's argument. Dr. Epstein testified that he reviewed Dr. Solberg's medical notes of September 9, 2013, which documented Claimant's two prior back injuries in 1999 and 2004:

> [Counsel]: Can you tell the Judge what the important medical records were for you in this particular case?
>
> [Epstein]: Records from Dr. Solberg, who's a doctor, ended up doing two EMGs on [Claimant], indicated that there were two prior work injuries with regards to [Claimant's] back. The first was in 1999, resulting in an L4-5 disc bulge that was exacerbated. There was radiculopathy of the L4, L5 and S1 nerve roots. A sprain and strain of the gluteus maximus muscle in his buttocks as well the iliotibial tract, which is a muscle tendon group on the outside of the thigh, and an ankle sprain and strain.
>
> There was also a history of a motor vehicle accident from 2004 with diagnoses of a disc herniation L5-S1, an aggravation of the

lumbar and sacral radiculopathies, trapezius sprain and strain and a lumbosacral sprain and strain.

N.T. 17-18. As can be seen from this testimony of Dr. Epstein, he reviewed the diagnoses of Claimant's back injuries that predated the incident of August 16, 2013.

Claimant also challenges the WCJ's finding that his work-related diagnoses were not "clinically evident." WCJ Decision, 10/1/2015, at 7, Finding of Fact No. 4(i). Claimant points out that Dr. Epstein acknowledged that Claimant's lumbar MRI report showed an annular tear but then testified that Claimant's clinical examination did not indicate a tear. Relatedly, Claimant argues that Dr. Epstein testified that Claimant had reached maximum medical improvement but not a full recovery. In support, Claimant cites the following deposition testimony:

> [Counsel]: Now, in the summary of findings, which is marked C-Epstein One, you say the primary diagnosis is a L2-3 bulge, an L3-4 tear, cervical disc protrusions and cervical radiculopathy; correct?
>
> [Epstein]: Yes. Excuse me. Yes.
>
> [Counsel]: All right. And you say causality, the diagnosis is related to the accident in question; correct?
>
> [Epstein]: Correct.
>
> [Counsel]: And then you say [Claimant] has reached maximum medical improvement and you write yes; correct?
>
> [Epstein]: Yes.
>
> [Counsel]: On this document, you don't say he was recovered from the L2-3 disc bulge; do you?
>
> [Epstein]: I do not.
>
> [Counsel]: On this document, you don't say he recovered from the L3-4 annular tear; do you?

8

[Epstein]: I don't.

[Counsel]: On this document, you don't say he recovered from [] the C5, C6, C7 radiculopathy bilateral; correct?

[Epstein]: Correct.

[Counsel]: On this document, you don't say [Claimant] recovered from the C4-5, C5-6, C6-7 disc protrusions; correct?

[Epstein]: Correct.

[Counsel]: You say he just reached maximum medical improvement; correct?

[Epstein]: Correct.

[Counsel]: And that's because he reached maximum medical improvement; correct?

[Epstein]: *He reached maximum medical improvement and he achieved a full and complete recovery.*

N.T., 7/24/2014, at 40-41 (emphasis added).

The record does not support Claimant's arguments. The lumbar MRI was performed on September 6, 2013, and the IME was performed on April 17, 2014. Dr. Epstein acknowledged that Claimant's work-related injuries included disc protrusions, an annular tear, and radiculopathy. However, his diagnostic testing during the IME revealed no evidence of an annular tear. Dr. Epstein opined that Claimant had recovered from the annular tear with physical therapy. N.T., 7/24/2014, at 35. Likewise, Dr. Epstein testified that Claimant had recovered from other work-related injuries including radiculopathy or disc protrusion, because the IME did not indicate that those conditions were present.

Claimant argues that Dr. Epstein's summary of findings supports his contention that Dr. Epstein opined only to maximum medical improvement. The

9

summary of findings is a form with preprinted questions to be answered by physicians, one being whether "[t]he examinee has reached maximum medical improvement." C.R. Item 38, Exhibit C-Epstein-1. Dr. Epstein circled "Yes" among "Yes," "No," and "Unknown." *Id.* This form is not conclusive. Dr. Epstein testified unequivocally that Claimant "reached maximum medical improvement and *he achieved a full and complete recovery*." N.T., 7/24/2014, at 41 (emphasis added).

When both parties present evidence, it does not matter that there is evidence in the record that supports a factual finding contrary to that made by the WCJ; rather, the critical inquiry is whether there is evidence to support the findings actually made. *Edwards v. Workers' Compensation Appeal Board (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161 (Pa. Cmwlth. 2016). The WCJ's finding that Claimant had recovered from the work injury was supported by the credible testimony of Dr. Epstein. Thus, this Court cannot disturb that finding.

For all of the foregoing reasons, we conclude that the WCJ's decision is reasoned and supported by substantial evidence. Accordingly, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Felton Robinson,                          :
                    Petitioner            :
                                          :
        v.                                :    No. 858 C.D. 2019
                                          :
Workers' Compensation Appeal              :
Board (Liberty Management Services),      :
                    Respondent            :


# **O R D E R**

AND NOW, this 1st day of May, 2020, the September 27, 2016, order of the Workers' Compensation Appeal Board, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge