IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ward Truckload Express, LLC,          :
                          Petitioner  :
                                      :
              v.                      :
                                      :
Workers' Compensation                 :
Appeal Board (Roy),                   :    No. 2623 C.D. 2015
                          Respondent  :    Submitted: May 20, 2016


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: September 2, 2016


          Ward Truckload Express, LLC (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) December 16, 2015 order affirming the Workers' Compensation Judge's (WCJ) decision granting Roscoe Roy's (Claimant) Petition to Reinstate WC Benefits (Reinstatement Petition) and Petition to Review WC Benefits (Review Petition) (collectively, Petitions). There are essentially two issues before this Court: (1) whether the Petitions are barred by res judicata/collateral estoppel; and (2) whether the Board erred by affirming the WCJ's grant of Claimant's Petitions when Claimant failed to prove that his condition changed, and the WCJ did not proffer a reasoned decision. After review, we affirm.

          On October 20, 2011, Claimant sustained a right ankle sprain/strain during the course and scope of his employment with Employer. Claimant was evaluated at WorkNet, where he was diagnosed with a right ankle sprain and prescribed anti-inflammatory medications, therapy, and magnetic resonance imaging

(MRI). Employer issued a Notice of Compensation Payable (NCP), and paid Claimant WC benefits. Claimant did not work, and treated at WorkNet from October 21, 2011 until December 21, 2011, when WorkNet released him to full-duty work.

Several weeks later, on January 20, 2012, Claimant began to experience increased right ankle pain and swelling, which he mentioned during an unrelated visit to his family doctor, Paul J. Baughman, D.O. (Dr. Baughman). Dr. Baughman referred Claimant to the Orthopedic Institute of Pennsylvania/William R. Polacheck, Jr., M.D. (Dr. Polacheck) for evaluation of his ankle.

On January 30, 2012, Dr. Polacheck deemed Claimant's November 2011 MRI "consistent with a significant ligament injury around the ankle" and, upon examination, observed "mild swelling of [Claimant's] ankle." Reproduced Record (R.R.) at 74a. Dr. Polacheck diagnosed Claimant with a "[r]ight ankle sprain with residual pain and swelling" and concluded:

> [Claimant's] job as a truck driver works against him. With it dependent [sic] all day, he is going to be prone to swelling. I am having him fitted with a new support. He should be in a corset. I explained that we can't do much more to increase his function. He does not need to be rigidly mobilized at this point. There is no role for surgery. I am going to have him use the brace and see how he does over the next month or so. He should try to elevate the leg when he has the opportunity. A stationary bike would be great exercise for him since he does not want to do any more rehab.

R.R. at 74a.

A few days later, on or about February 1, 2012, Employer terminated Claimant's employment for disobeying instructions. *See* R.R. at 170a-171a. On February 18, 2012, Employer petitioned to modify/suspend/terminate Claimant's WC benefits (Termination Petition), and a WCJ hearing was held. On May 10, 2012, the WCJ granted Employer's Termination Petition and discontinued Claimant's WC

benefits effective December 21, 2011. Claimant did not appeal from the WCJ's decision.

For approximately 18 months following his appointment with Dr. Polacheck, Claimant wore his ankle brace, but continued to experience constant pain and swelling depending upon his activity. He did not seek further medical treatment. Claimant retained counsel in 2013 because his ankle had not yet healed.

On July 16, 2013, Claimant was evaluated by orthopedic surgeon Craig M. Fultz, M.D. (Dr. Fultz). Dr. Fultz reviewed Claimant's medical records, took x-rays, obtained Claimant's medical history, and examined Claimant. Dr. Fultz diagnosed that Claimant was experiencing neurogenic pain, allodynia and hypesthesia that were causally related to Claimant's October 20, 2011 right ankle work injury. Dr. Fultz prescribed a transdermal cream and pain management care.

On August 2, 2013, Claimant filed the Reinstatement Petition seeking to have his WC benefits reinstated due to the worsening of his work injury. A WCJ hearing was held on October 4, 2013. On October 10, 2013, Claimant filed the Review Petition, requesting to amend the NCP "to include additional injuries as reflected in [Dr. Fultz's] 07/16/13 office notes and report." R.R. at 59a. Employer denied Claimant's allegations.

On November 13, 2013, foot and ankle surgeon Howard J. Zlotoff, D.P.M. (Dr. Zlotoff) conducted an independent medical examination (IME) at Employer's request. Dr. Zlotoff concluded that Claimant had fully recovered from his work injury, and did not require any additional treatment. *See* R.R. at 154a-156a.

Claimant's Petitions were consolidated. Additional WCJ hearings were held on June 6, August 28 and October 24, 2014. By February 4, 2015 decision, the

3

WCJ granted the Petitions. Employer appealed to the Board. On December 16, 2015, the Board affirmed the WCJ's decision. Employer appealed to this Court.[1]

Initially, relative to reinstatement petitions, Section 413(a) of the Workers' Compensation Act (Act)[2] states, in pertinent part:

> A workers' compensation judge designated by the department may, at any time . . . reinstate . . . a notice of compensation payable . . . upon proof that the disability of an injured employe has increased . . . [or] recurred . . . . Such . . . reinstatement . . . shall be made as of the date upon which it is shown that the disability of the injured employe has increased . . . [or] recurred[.]

77 P.S. § 772. "Generally, a claimant seeking reinstatement . . . must prove that through no fault of his own, his disability is again adversely affected by the work injury, and the disability giving rise to the original claim continues." *Ward v. Workers' Comp. Appeal Bd. (City of Phila.)*, 966 A.2d 1159, 1162 (Pa. Cmwlth. 2009).

With respect to review petitions, Section 413(a) of the Act also provides, in pertinent part: "A [WCJ] may, at any time, review and modify . . . a[n NCP] . . . upon petition filed by either party with the [D]epartment [of Labor and Industry (Department)], . . . if it be proved that such [NCP] or agreement was in any material respect incorrect." 77 P.S. § 771. "The burden of proof is on the party seeking to modify the NCP . . . ." *Anderson v. Workers' Comp. Appeal Bd. (Pa. Hosp.)*, 830 A.2d 636, 641 (Pa. Cmwlth. 2003).

---

[1] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

Employer filed an application for supersedeas, which this Court denied by March 16, 2016 memorandum and order.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

Employer argues at great length in its brief that Claimant's Petitions are barred by res judicata/collateral estoppel because Claimant failed to appeal from the WCJ's May 10, 2012 termination order.  We disagree.

"[T]echnical res judicata and collateral estoppel are both encompassed within the parent doctrine of res judicata, which 'prevents the relitigation of claims and issues in subsequent proceedings.'"  *Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008) (quoting *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001)).

> Under the doctrine of technical res judicata, often referred to as claim preclusion, 'when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded.' [*Henion*, 776 A.2d at 365].  In order for technical res judicata to apply, there must be: '(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued.' *Id.* at 366.  Technical res judicata may be applied to bar 'claims that were actually litigated as well as those matters that *should have been* litigated.' *Id.* (emphasis added).  'Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings.' *Id.*
>
> The doctrine of collateral estoppel, often referred to as issue preclusion, 'is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously litigated.' *Pucci v. Workers' Comp*[.] *Appeal B*[d.] *(Woodville State Hosp.)*, 707 A.2d 646, 647-48 (Pa. Cmwlth. 1998).

*Weney*, 960 A.2d at 954.

Employer previously petitioned to *terminate* Claimant's WC benefits and succeeded.[3]  Claimant does not contend that his WC benefits should not have been terminated effective December 21, 2011, but rather seeks to have his status amended based upon changes that have occurred *since* December 21, 2011, as recorded by Dr. Fultz on July 16, 2013.  Section 413(a) of the Act expressly authorizes Claimant to do so.

This Court has explained:

> To have [his] benefits reinstated after a termination, Claimant had to prove a causal connection between [his] current condition and the prior work-related injury by establishing that (1) [his] work injury has recurred and (2) [his] physical condition has changed since the prior decision. By contrast, in a termination proceeding, the employer bears the burden of proving that the claimant's disability has ceased or that any current disabilities are unrelated to the work injury.  The ultimate and controlling issue decided in Employer's termination petition was whether Claimant was fully recovered from [his] work-related injury, and []he was found to be fully recovered as of [December 21, 2011].  The ultimate controlling issue in Claimant's reinstatement petition . . . is whether [his] work injury recurred as of [July 16, 2013].  **These issues are not identical because they involve factual questions about Claimant's condition at two unrelated time periods**.  In short, Claimant's reinstatement petition is not barred by *res judicata* or collateral estoppel.

---

[3] Employer erroneously states that, in granting the Termination Petition, the WCJ declared that the "'injury' from which Claimant originally suffered *no longer exists*."  Employer Br. at 26. Under the law, it is not the work injury, but the resulting disability that is examined in a termination proceeding.  "In workers' compensation, the term 'disability' means a loss of earning power." *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 401 (Pa. Cmwlth. 2015).  There is no question in this case that Claimant returned to work without a loss of earnings as of December 21, 2011 and, thus, the WCJ properly determined that Claimant's disability ceased as of that date.

Notably, Employer filed to terminate Claimant's benefits approximately two weeks *after* Employer discharged him.  Thus, Claimant's loss of earning power was related to his work conduct rather than his October 20, 2011 work injury.  Accordingly, in granting Claimant's Petitions, the WCJ required Employer to pay only reasonable and necessary medical benefits.

6

*Nat'l Fiberstock Corp. (Greater N. Y., Mut. Ins. Co.) v. Workers' Comp. Appeal Bd. (Grahl)*, 955 A.2d 1057, 1061-62 (Pa. Cmwlth. 2008) (citations omitted; emphasis added).

Employer next argues that the Board erred by affirming the WCJ's grant of Claimant's Petitions when Claimant failed to prove that his condition changed, and the WCJ did not proffer a reasoned decision. We disagree.

Neither the Board nor the Court may reweigh the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001).

> Notwithstanding the authority of the WCJ over questions of weight and credibility of evidence, the WCJ's findings must still be supported by substantial evidence of record. Substantial evidence is relevant evidence that a 'reasonable person might accept as adequate to support a conclusion.' *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.),* 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). In reviewing a decision for substantial evidence, the court must view the evidence in the light most favorable to the party who prevailed before the WCJ and draw all reasonable inferences from the evidence in favor of the prevailing party.

*Wieczorkowski v. Workers' Comp. Appeal Bd. (LTV Steel)*, 871 A.2d 884, 890 (Pa. Cmwlth. 2005). "[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (quoting *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005)). Finally, "[t]he determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

7

In support of his Petitions, Claimant testified and offered his medical records and Dr. Fultz's testimony into evidence. According to Claimant, his WorkNet therapy rendered him pain free and able to return to full-duty work as of December 21, 2011, but that his pain and swelling increased approximately 2½ weeks after his return to work. He described visiting Dr. Baughman on January 20, 2012, being referred to Dr. Polacheck and, thereafter, wearing his ankle brace for approximately 18 months before contacting counsel, who referred him to Dr. Fultz.[4]

Claimant reported that his ankle had worsened since January 2012, shortly after he returned to work. Claimant related that he experiences constant daily right ankle pain, and swelling that depends upon his activity level. He described that ankle pain limits his ability to do "[t]hings like standing there pushing my daughter on a swing, standing there just to cook or even on the grill, playing basketball, walking long distances." R.R. at 176a. Claimant also explained that although work as a truck driver after his February 2012 discharge affected his ankle, he has not been restricted from working as a result. *See* R.R. at 171a-172a. At the October 24, 2014 hearing, Claimant pronounced that he was in school. *See* R.R. at 181a. Thus, Claimant is seeking only medical benefits for his work injury. *See* R.R. at 176a.

Dr. Fultz testified that he treated Claimant on July 16, 2013, and again in August, September and December 2013. He represented that Claimant's only reported injury history was his October 20, 2011 work injury. As a result of Claimant's records review, history and examinations, Dr. Fultz concluded:

> A. The diagnosis I assigned [Claimant] was right ankle and foot pain, status post a work-related injury in October of 2011 with MRI findings consistent with a sprain of the interior talofibular ligament, deep deltoid ligament,

---

[4] Claimant testified that he retained counsel because when he contacted the Bureau of Workers' Compensation and reported that "something's wrong with [his] foot still," he was notified that his case was closed. R.R. at 168a.

posterior talofibular ligament and calcaneofibular ligament with bone bruising and ongoing pain and dysesthesia in the medial aspect of the hindfoot.

Q. And do you have an opinion to a reasonable degree of medical certainty whether those conditions are directly related to the October 2011 work injury?

A. It's my opinion that they are causally related to the work-related injury.

Q. Okay. Now, as a result of those conditions, did you diagnose any additional medical condition directly related to those conditions?

A. It's my opinion that the neurogenic pain, the allodynia and hypesthesia are a result of that injury, so that is also considered an additional diagnosis to his foot and ankle.

Q. And now, you'll have to explain to the Judge how the neurogenic pain resulted from those injuries, please?

A. When people have injuries, it's not unusual for them to have the foot positioned, in a position that would cause a stretch injury to the nerves that run across the injury area, or the nerves get injured either due to stretching, due to swelling or actual pressure on them.

And the history provided to me and as is in the medical records that this gentleman did have swelling in his foot. And the injuries we see on the MRI scan would be consistent with somebody developing significant swelling in his foot and ankle after sustaining those injuries.

And it's my opinion, and we see this with some frequency, that people that have ankle fractures, ankle sprains, that have a stretch injury or swelling caused by the initial injury, can sometimes get nerve disfunction. And it can run the gamut to a little bit of numbness, to a little bit of numbness and pain, to hypersensitivity. And then there's the whole spectrum of which nerves are involved, and some people can get causalgia and other more complicated nerve problems.

And this gentleman, fortunately he did not have symptoms of causalgia, or what some people call RSD [reflex

9

sympathetic dystrophe syndrome/complex regional pain syndrome]. But he did have a very discrete pattern of where he had the hypersensitivity that fits with the medial calcaneal sensory nerve, which I believe has been causing pain for him. And it's very discrete. It's been reproducible on his exams and transdermal therapeutic creams for neurogenic pain has helped him to some degree, which further supports that diagnosis.

. . . .

Q. And his condition as of the last time you saw him, which was --

A. 9/13/2013.

Q. Thank you.

A. Correction. 12/19/2013 was the last time I saw him. When I saw him on 9/13/2013, his symptoms had improved; although, not resolved with the transdermal cream. And we had talked about him seeing a non-interventional pain management physician. And the reason why I had suggested that is with these types of injuries of the nerve, surgical intervention is usually not successful. Oftentimes, non-interventional treatment is helpful. And there are some medications out there that we, as orthopedics, don't usually manage, but pain management physicians do, that oftentimes help people that have neuropathic pain, like Neurontin, Lyria, Gabapentin, those medications.

So I recommended [he] pursue that, and in the meantime I'd recommend [he] continue to use the cream. The cream I supplied him was a combination cream that has medications that usually are helpful to people who have neuropathic pain.

. . . .

Q. Doctor, do you believe that he, as of your last office visit of December of 2013, has fully recovered from his October of 2011 work injury, as you diagnosed it?

A. No.

Q. Do you believe he would require any additional treatment?

A. I believe he would benefit from ongoing use of a support stocking, which I had discussed and recommended at a previous visit, and ongoing treatment for his nerve pain that he's having. I think the treatment that I initiated has helped him to some degree, but I think there's potential that he would get more pain relief with perhaps a systemic medication.

Q. Okay, and do you believe that that treatment that you prescribed would be reasonable and necessary for his work injury?

A. Yes.

Q. What is his prognosis?

A. Given that he is two years out from the injury and having ongoing nerve pain, it's not likely he's going to become asymptomatic. And with people like this, my experience has been often times we can improve his symptoms, but it may not eradicate them.

R.R. at 98a-102a. Dr. Fultz acknowledged that he has not restricted Claimant's ability to work.

In response, Dr. Zlotoff testified that "[t]here was a significant difference" between the way Claimant walked in the parking lot before and after his appointment (i.e., "propulsively and without a limp"), and the manner in which he walked during his examination (i.e., "with a significantly [impaired] gait"). R.R. at 123a; *see also* R.R. at 124a. Dr. Zlotoff stated that he reviewed Claimant's medical records, took Claimant's medical history and conducted a physical examination. He recalled that Claimant's right ankle was not swollen and that, despite Claimant's assertion that his right ankle was too weak to stand on his toes, Claimant's x-rays, and neurologic and musculoskeletal exams were normal. Dr. Zlotoff also related that Claimant responses to some of his examination reflected that Claimant's "credibility

11

was significantly questionable." R.R. at 127a. Dr. Zlotoff diagnosed Claimant as having a sprained right ankle.

With respect to Dr. Fultz's findings and diagnoses, Dr. Zlotoff declared:

A. I was not able to discriminate any objective findings that would indicate [Claimant] had [neurogenic] pain.

Q. Did you have an impression or an opinion as to whether this man was suffering from complex regional pain syndrome or RSD?

A. He had no indication subjectively or objectively of that.

Q. Given his description of how he injured himself and the early records describing the injury, would that mechanism of injury normally be associated with RSD or complex regional pain syndrome?

A. No.

Q. Do you believe that his ongoing complaints and treatment are the result of the work injury of October 20, 2011?

A. No.

Q. Now, there has been a determination by [the WCJ] that this gentleman recovered from the effects of the work injury by December of 2011.

Do you concur with that finding?

A. I do.

Q. If he had been your own patient, would you have fully discharged him from treatment?

A. Yes.

Q. And in your opinion did he require any modalities of treatment for his foot and ankle?

A. No.

R.R. at 129a-130a.

Dr. Zlotoff acknowledged that a June 2014 electromyogram (EMG) reflected positive findings of right plantar sensory neuropathy, possibly related to traumatic injury, but deemed them not credible in light of his findings and a notation on the EMG report that some of the results may be biased due to Claimant's sensitivity in the affected areas.[5] *See* R.R. at 79a, 136a-140a. Notwithstanding that Dr. Zlotoff was not in attendance at Claimant's 2012 visit with Dr. Polacheck and 2013 visits with Dr. Fultz, he opined that Claimant was fully recovered from his work injury as of December 21, 2011.

The law is well established that "[t]he WCJ . . . is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). Moreover, Section 422(a) of the Act provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence.

77 P.S. § 834. This Court has stated:

> To constitute a reasoned decision within the meaning of Section 422(a) [of the Act], a WCJ's decision must permit adequate appellate review. . . . '[S]ome articulation of the actual objective basis for the credibility determination must

---

[5] Claimant paid out-of-pocket for an June 25, 2014 EMG in preparation for his claims. *See* R.R. at 79a, 179a-180a.

13

be offered for the decision to be a 'reasoned' one which facilitates effective appellate review.'

*Green v. Workers' Comp. Appeal Bd. (US Airways)*, 28 A.3d 936, 940 (Pa. Cmwlth. 2011) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194–95 (Pa. Cmwlth. 2006)).

The reasoned decision requirement in "Section 422(a) [of the Act] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey*, 893 A.2d at 195 (citation omitted). "A capricious disregard of evidence occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considers and rejects the evidence. *Id.* "The reasoned decision requirement is simply that the WCJ must articulate some objective reasoning to facilitate appellate review of the same." *Green*, 28 A.3d at 940.

Based upon the foregoing evidence, the WCJ made the following findings of fact:

> 52. This [WCJ] finds Claimant's testimony to be credible in its entirety and worthy of belief. This [WCJ] finds it significant that Claimant did not appear to defend the prior round of litigation based upon a failure to receive the hearing notices in question, which resulted in findings that he fully recovered from his October 2011 work injury.
>
> 53. This [WCJ] finds that the totality of the medical records reveal a change in [C]laimant's ankle which caused the recurrence of his work injury. The record supports the occurrence of this change as early as just a few weeks after Claimant's December 21, 2011 full recovery, and was apparent during Claimant's July 16, 2013 examination with Dr. Fultz. Claimant's medical records in early 2012 document pain and swelling and the effect his work at the

14

time had on his ankle condition. Moreover, Dr. Fultz's examinations demonstrate objective and reproducible neurogenic pain.

54. This [WCJ] credits the opinion of Dr. Fultz as competent, credible, and worthy of belief in its entirety. Dr. Fultz evaluated Claimant and reviewed his medical history. He provided an opinion that Claimant sustained a work injury in October 2011 that ultimately resulted in the following diagnoses:

  a. Right ankle and foot pain status post a work-related injury in October 2011.

  b. MRI findings consistent with a work-related sprain of the interior talofibular ligament, deep deltoid ligament, . . . posterior talofibular ligament, and calcaneofibular ligament with bone bruising and ongoing pain in the medial aspect of the hindfoot.

  c. Work-related neurogenic pain resulting from the above injuries.

According to Dr. Fultz, Claimant's only ongoing problem was the neurogenic pain. He related this condition to the swelling in Claimant's ankle. This swelling is well documented in Claimant's medical records in early 2012 and in Dr. Fultz's testimony/records.

55. This [WCJ] rejects the opinion of Dr. Zlotoff as not credible, as it is not consistent with the credible opinions of Dr. Fultz. Dr. Zlotoff's opinion is largely based upon his subjective observation of Claimant entering/leaving his office in comparison to Claimant's presentation during his examination. Dr. Zlotoff attempted to evaluate Claimant's credibility, which is the function of this [WCJ], not Dr. Zlotoff. This [WCJ] rejects his opinion in favor of the opinion of Dr. Fultz.

56. Based upon the competent and credible evidence of record, this [WCJ] finds as a fact that Claimant's injury recurred after December 21, 2011, a finding that was confirmed as of Dr. Fultz's examination of Claimant on July 16, 2013.

WCJ Dec. at 8-9.  The WCJ concluded that "Claimant met his burden of proving his work injury recurred on July 16, 2013 and his condition had worsened since December 21, 2011," and ordered Employer to pay reasonable and necessary medical expenses related to Claimant's work injury.  WCJ Dec. at 9.  Finding no error, the Board agreed.  *See* Board Op. at 9-10.

The WCJ's decision in this case, which included lengthy summations of the respective witnesses' testimony, reveals that the WCJ considered the full testimony of all the witnesses and he set forth the reasons for his determinations.  Because the Board and this Court are able to determine why and how he reached the result he did, the WCJ issued a reasoned decision.[6]  *Green.*

Moreover, viewing the evidence in a light most favorable to Claimant, as we must, and drawing all reasonable inferences which are deducible from the evidence the WCJ deemed credible, we hold that there was substantial evidence to support the WCJ's findings that there was a causal connection between Claimant's current condition and his work-related injury, and that his condition "has changed since the [WCJ's prior termination] decision." *Nat'l Fiberstock Corp.*, 955 A.2d at 1061.  Substantial evidence also supported the WCJ's determination that the NCP should be amended to include neurogenic pain, allodynia and hypesthesia.  Accordingly, the Board properly affirmed the WCJ's decision granting Claimant's Petitions.

---

[6] Although the WCJ failed to specify how he selected the July 16, 2013 reinstatement date, it is clear from the WCJ's findings of fact that Claimant's medical benefits were reinstated as of the first date on which Claimant treated with Dr. Fultz - July 16, 2013.  A recurrence date can be based upon a physician's examination date.  *See Nat'l Fiberstock Corp.*

Based on the foregoing, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ward Truckload Express, LLC,      :
                    Petitioner   :
                                    :
             v.                 :
                                    :
Workers' Compensation       :
Appeal Board (Roy),         :   No. 2623 C.D. 2015
                  Respondent  :

## O R D E R

AND NOW, this 2nd day of September, 2016, the Workers' Compensation Appeal Board's December 16, 2015 order is affirmed.

 

_____
ANNE E. COVEY, Judge