IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynette Fortune,                           :
                Petitioner         :
                                  :
         v.                :
                                  :
Workers' Compensation Appeal                :
Board (Sparc Services),                     :    No. 1465 C.D. 2018
                Respondent        :    Submitted: March 1, 2019


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: June 27, 2019


        Lynette Fortune (Claimant) petitions for review of the October 1, 2018 order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of Workers' Compensation Judge Scott Olin (WCJ) that granted in part and denied in part Claimant's Claim Petition for Compensation Benefits (Claim Petition) against Sparc Services (Employer) pursuant to the Workers' Compensation Act (Act).[1]  We affirm the Board.

        On August 10, 2015, Claimant filed a claim petition alleging that on June 1, 2015, she suffered injuries to her right foot, right ankle, neck, both arms, and both hands while getting up from her desk in the course of her employment as a photo license technician with Employer.  *See* Claim Petition dated August 10, 2015

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

(Claim Petition); WCJ Decision Issued November 7, 2017 (WCJ Decision), Findings of Fact (F.F.) 1. On August 30, 2015, Employer filed an Answer to Claim Petition denying Claimant's allegations. *See* Answer to Claim Petition filed August 30, 2015.

After conducting a series of hearings, on November 9, 2017, the WCJ issued a decision that granted the Claim Petition in part and denied the Claim Petition in part. *See* WCJ Decision. The WCJ determined that Claimant established that she suffered a work-related ankle injury on June 1, 2015 that persisted through October 18, 2015. *See id.* at 9. Therefore, the WCJ awarded Claimant weekly benefits for that period of time. *Id.* However, the WCJ also determined that Claimant failed to establish that the work injury caused continued disability as of October 19, 2015. *Id.* Accordingly, the WCJ denied benefits as of October 19, 2015. *Id.* Claimant appealed, claiming the WCJ erred by determining that her work injury was fully resolved and/or limited to her ankle. *See* Claimant Appeal to Board filed November 29, 2017. The Board affirmed the WCJ Decision by opinion dated October 1, 2018. *See* Board Opinion filed October 1, 2018 (Board Opinion). Claimant timely petitioned this Court for review.[2]

---

[2] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workers' Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

> Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

2

On appeal, Claimant alleges the Board erred by affirming the WCJ Decision that limited her work injury to her right foot and ankle and determined that the injury had resolved, and, consequently, that Claimant's entitlement to benefits had ceased as of October 19, 2015. *See generally*, Claimant's Brief. We disagree.

"With respect to a claim petition, the claimant bears the initial burden of proving that [an] injury arose in the course of employment and was related thereto." *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 (Pa. Cmwlth. 2017). "Moreover, the claimant not only must prove that she has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition proceeding." *Milner v. Workers' Comp. Appeal Bd. (Main Line Endoscopy Ctr.)*, 995 A.2d 492, 496 (Pa. Cmwlth. 2010). "If the WCJ feels that the evidence supports a finding of disability only for a closed period, she is free to make such a finding." *Id.* "Generally, if there is no obvious relationship between the disability and the work-related cause, unequivocal medical testimony is required to meet this burden of proof." *Frankiewicz*, 177 A.3d at 995. "Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002).

Here, Claimant testified before the WCJ on October 1, 2015. F.F. 3. She explained that, as she rose from a chair at her sedentary job on Monday, June 1, 2015, she felt an immediate, sharp pain in her right foot and grabbed onto a chair to avoid falling. F.F. 4. Claimant explained that her foot did not hurt following the initial incident, and so she worked a few more days until she felt the pain again on

---

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

3

the weekend. *Id.* Claimant testified that after working the following Monday, June 8, 2015, she began to experience muscle spasms in her back and throbbing in her foot. *Id.* She further claimed she developed neck pain, which she attributed to twisting while turning to grab the chair on June 1, 2015. *Id.* Claimant explained she went to see a doctor who placed her on medical leave for two weeks, that she stopped all work on June 16, 2015, and that she cannot physically return to her pre-injury duties. *Id.* Claimant testified that, at the same time she worked for Employer, she also worked as a volunteer investigator for a Channel Six television show for four hours a week. *Id.* On cross-examination, Claimant conceded that the pain she experienced following the June 1, 2015 incident was initially limited to her right heel, but stated that she now experiences pain in both arms, both thumbs, her entire lower back, both legs, and her neck. F.F. 4A. She further conceded that her alleged neck and back pain did not appear until days after the initial incident. *Id.*

Claimant also presented the deposition testimony of Bruce Levin, M.D. F.F. 3. Dr. Levin, a board-certified anesthesiologist with expertise in pain management, testified that he has treated Claimant since September 21, 2015. F.F. 5. Dr. Levin explained that, during his initial examination of Claimant, she explained the mechanism of her injury by stating that she had lost her footing, twisted her ankle, then lost her balance and jerked herself back. *Id.* Dr. Levin testified that Claimant alleged pain in her lower back, right foot, heel and neck that radiated into both her hands and thumbs. *Id.* Dr. Levin's examination revealed reduced ranges of back and neck motion as well as positive signs for radiculitis and radiculopathy. *Id.* Dr. Levin also testified that his review of Claimant's lumbar and cervical MRIs revealed degenerative changes and protrusions on the left at L4-5 and L5-S1 and cervical protrusions and herniations at every level. *Id.* Dr. Levin

4

explained that, despite his prescriptions, Claimant did not want to take pills and declined injections, although she responded somewhat to a regimen of physical therapy and topical medications. *Id.* Ultimately, Dr. Levin had diagnosed a work-related right ankle sprain with tarsal tunnel syndrome, cervical and lumbar strain/sprain, cervical herniations with radiculopathy, and an aggravation of underlying degenerative disc disease. *Id.* Dr. Levin deemed Claimant unable to return to work. *Id.* On cross-examination, Dr. Levin stated that it was "possible" that Claimant's lower back complaints were related to the work incident. F.F. 5A.

Claimant also presented the deposition testimony of Marc Baer, D.P.M. F.F. 3. Dr. Baer, a podiatrist certified in foot and ankle reconstruction, began treating Claimant on September 2, 2015. F.F. 6. Dr. Baer reviewed Claimant's medical records, which he testified illustrated tendonitis around the Achilles tendon with mild ankle arthritis and osteochondral defects in the ankle joint in Claimant's right ankle. *Id.* Upon physical examination, Dr. Baer found normal strength in Claimant's right foot and ankle tendons with no bruising or swelling and no Achilles tear, although minimal inflammation was observed. *Id.* Dr. Baer prescribed a walker boot and a regimen of the steroid Medrol. *Id.* Subsequent examinations through February 3, 2016 revealed continuing symptomology, prompting Dr. Baer to prescribe a Molded Ankle-Foot Orthosis brace. *Id.* Dr. Baer opined that Claimant suffered a work-related ankle injury, but could not determine whether Claimant's reported pain resulted from this injury or from her back. *Id.* Dr. Baer testified that he would limit Claimant's walking and standing and impose a 10-pound lifting limitation. *Id.* On cross-examination, Dr. Baer indicated that Claimant can perform sedentary employment. F.F. 6A. He conceded that he lacked information sufficient to diagnose Claimant with tarsal tunnel syndrome, and further conceded that his

5

initial examination found no objective findings beyond Claimant's subjective complaints of pain. *Id.*

To contest Claimant's evidence, Employer presented the deposition testimony of Barry Bussell (Bussell), one of its directors. F.F. 7. Bussell testified that he hired Claimant in 2014 and that her license photo technician position was "absolutely" sedentary in nature. F.F. 8. He further testified that Claimant originally called out of work due to a non-work-related hand injury. *Id.* Bussell testified Claimant's last day was June 16, 2015, and that Employer did not learn of her alleged work injury until July 17, 2015. *Id.*

Employer also presented the deposition testimony of David Glasser, M.D. F.F. 7. Dr. Glasser, a board-certified orthopedic surgeon, testified that he evaluated Claimant on October 19, 2015, at which time she walked with a normal gait and displayed a full range of shoulder motion. F.F. 9. Dr. Glasser explained that, despite Claimant's subjective complaints of neck pain, she tested negative for nerve irritation, nerve compression, and thoracic outlet syndrome. *Id.* Claimant's arm elevated normally, her ankle was stable with no signs of effusion or Achilles pathology, and her spine was free of muscle spasms. *Id.* While a review of Claimant's historical imaging studies illustrated longstanding degenerative changes at every level of the spine, Dr. Glasser's clinical testing did not indicate to him any specific issue with Claimant's neck or lumbar spine. *Id.* Ultimately, Dr. Glasser explained that he found no objective signs of any injury to the musculoskeletal system that he could attribute to the alleged work-related injury. *Id.* As such, Dr. Glasser released Claimant back to work without restrictions or need for further medical treatment. *Id.* On cross-examination, Dr. Glasser noted discrepancies in the various treating physicians' medical records regarding the onset of Claimant's

6

alleged neck and lower back pain. F.F. 9A. He did note, however, that some records initially restricted Claimant's ability to work based on pain in her right foot. *Id.*

Employer also presented the deposition transcript of Joshua L. Moore, D.P.M. F.F. 7. Dr. Moore, a board-certified podiatrist, evaluated Claimant on September 21, 2015. F.F. 10. Despite Claimant's initial subjective complaints of pain, Dr. Moore's examination found that Claimant's muscle strength and sensation were intact with no pain along the course of the Achilles or in the area where Claimant initially reported pain. *Id.* Following his examination, Dr. Moore could not pinpoint an area of pain or provide a diagnosis, and he released Claimant to pre-injury duties without need of further medical treatment. *Id.* On cross-examination, Dr. Moore noted either a small amount of fluid in Claimant's posterior subtalar joints or a defect of the cartilage, but explained that Claimant does not suffer from a talar dome lesion. F.F. 10A.

Additionally, Employer submitted multiple exhibits into evidence. *See* F.F. 11-15. These exhibits included: (1) medical records from Industrial Health Center and Einstein Medical Center detailing Claimant's foot and ankle treatment; (2) medical records from Progressive Physical Therapy regarding her neck sprain and hand joint pain; (3) medical records from her treating physician detailing her treatment from July 2007 through August 2015; (4) Claimant's June 17, 2015 letter to Employer detailing her work accident; and (5) three photographs of Claimant's pre-injury workspace. *Id.*

Claimant testified in rebuttal before the WCJ on September 8, 2016. F.F. 16. At that time, Claimant explained that her right foot pain had resolved, but that her back continues to spasm daily. *Id.* She testified that she treats her back spasms with aloe vera and a Lidocaine patch. *Id.* Claimant explained that she has

7

returned to her volunteer position for Channel Six, and she attends weekly physical therapy for her foot, back, and neck. *Id.* She also testified that she had telephoned on June 18, 2015 and notified Employer that she had been injured at work. *Id.*

As this Court has previously noted:

> [t]he WCJ is the fact finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth.), *reargument denied* (Apr. 3), *appeal denied*, 173 A.3d 252 (Pa. 2017) (internal citations, quotations, and brackets omitted).

Based on the evidence presented, the WCJ made the following factual determinations:

> (a) that [the] testimony of [Claimant] of experiencing right ankle/foot pain arising from her work chair and planting her foot on the ground on June 1, 2015 is credible;
>
> (b) that [the] findings and conclusions of Dr. Levin of neck/low back pathology resulting from the work incident are not credible and less persuasive than [the] contrary testimony of Dr. Glasser;
>
> (c) that Dr. Glasser's findings and conclusions of full recovery from all physical residuals of [] Claimant's June 1, 2015 work incident are fully credible and more persuasive than contrary testimony of Drs. Baer and

8

Levin. Dr. Moore's findings/conclusions are also persuasive;

(d) that Claimant's testimony of ongoing right foot/ankle pain beyond October 18, 2015 is unpersuasive and not credible;[3] and

(e) that Claimant stopped work on June 16, 2015.

F.F. 17.

As a result of the WCJ's credibility determinations, which we must accept, as did the Board,[4] we find that substantial record evidence supports the WCJ's findings of fact, specifically that Claimant had suffered a work-related injury on June 1, 2015, from which she had fully recovered as of October 19, 2015. Therefore, the WCJ properly awarded Claimant compensation benefits from June 17, 2015 through October 18, 2015, and properly terminated Claimant's compensation benefits from October 19, 2015 onward. *See* WCJ Decision at 9 & Order. Claimant's assertions of error represent nothing more than a challenge to the WCJ's credibility determinations and an attempt to argue her preferred version of the facts. The Board did not err in affirming the WCJ's Decision.

Accordingly, the Board's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[3] We note the WCJ described Claimant's testimony as "highly problematic" and "a mess." WCJ Decision at 7-8.

[4] *See* Board Opinion at 4-5.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynette Fortune,                        :
                    Petitioner           :
                              :
          v.                     :
                              :
Workers' Compensation Appeal           :
Board (Sparc Services),                :     No. 1465 C.D. 2018
                   Respondent        :

## O R D E R

AND NOW, this 27th day of June, 2019, the October 1, 2018 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge