# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce Sephes,
                      Petitioner

            v.

Nationwide Housing Management
and Uninsured Employers Guaranty
Fund (Workers' Compensation Appeal
Board),
                      Respondent

:
:
:
:
:   No. 430 C.D. 2021
:   SUBMITTED: December 17, 2021
:
:
:
:
:
:

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                **FILED: June 1, 2022**

       Bruce Sephes petitions for review of an order of the Workers'
Compensation Appeal Board (Board), which affirmed the decision of the Workers'
Compensation Judge (WCJ) granting his claim petitions against Nationwide
Housing Management (Employer) and the Uninsured Employers Guaranty Fund
(UEGF) for a closed period, and thereafter terminating benefits.[2]  On appeal,
Claimant argues that the WCJ erred in terminating his benefits when his medical

---

    [1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita
Leavitt became a senior judge on the Court.

    [2] The Board also affirmed the WCJ's decision to grant Claimant's penalty petition against
Employer.  The penalty petition is not at issue on appeal.

evidence established that his work-related L4 radiculopathy had not fully resolved. Following review, we affirm the Board.

On May 17, 2019, Claimant filed a claim petition stating that he sustained a "gunshot wound [to his] chest area, multiple left sided fractured ribs, internal injuries, [and] status post stomach surgery" on April 10, 2019, while working for Employer as a maintenance technician. (Reproduced Record "R.R." at 1a-3a.) Claimant also filed a penalty petition claiming that Employer was notified of his injuries and failed to accept or deny his claim within 21 days in accordance with the Workers' Compensation Act (Act).[3] (R.R. at 8a.) On June 11, 2019, following receipt of documentation that Employer did not have workers' compensation coverage, Claimant filed a notice of claim against the UEGF raising the identical allegations made against Employer in the claim petition. (R.R. at 10a-14a.)

On August 15, 2019, Claimant testified by deposition that he worked full time for Employer performing repairs and maintenance work in its apartments. (WCJ Decision, 6/25/2020, Finding of Fact "F.F." No. 4(a).) On April 10, 2019, he was repairing an appliance in one of the apartments, when he heard "a big commotion outside[.]" (F.F. No. 4(c).) Employer's garage, located about a half block away, was unlocked, so Claimant suspended his repair work to go lock it. (F.F. No. 4(c), (d).) While walking back to the apartment after locking the garage, Claimant heard gunshots, felt a sharp pain in his chest, and could not breathe. (*Id.*) Claimant heard more shots, began to run, and fell as he ran away. (*Id.*) A tenant drove him to the hospital, where he underwent abdominal surgery. (F.F. No. 4(d), (e).)

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

2

Claimant testified that he cannot return to work because his job requires a lot of walking, lifting, twisting, and turning. (WCJ Decision, 6/25/2020, F.F. No. 4(m).) He continues to have back and stomach pain. (F.F. No. 4(l), (m).) Additionally, he has problems with shortness of breath and difficulty climbing steps. (F.F. No. 4(q).)[4]

Claimant presented additional testimony before the WCJ on February 5, 2020. (WCJ Decision, 6/25/2020, F.F. No. 5(a).) He continues to undergo medical treatment for his stomach and back, and an x-ray revealed a bullet fragment in the area. (F.F. No. 5(b).) For his back, he has a brace and uses an electrical stimulator, and he receives injections. (*Id.*) For both his back and chest, he receives physical therapy and is prescribed Tramadol, Meloxicam, and a muscle relaxer. (F.F. No. 5(b), (f).) Claimant received a job offer from Employer on October 31, 2019, to return to his preinjury job without restrictions. (F.F. No. 5(c).) Claimant stated, however, that he cannot return to work because he has ongoing back, chest, and stomach issues, along with pain. (F.F. No. 5(c), (d).)

Claimant presented the deposition testimony of Dr. William Pavlou in support of his claim. Dr. Pavlou is board certified in family medicine and began treating Claimant on May 15, 2019. (WCJ Decision, 6/25/2020, F.F. No. 6(a).) Claimant's medical records established that Claimant sustained a gunshot wound to his left upper abdomen and lower thoracic area. (*Id.*) Claimant had two fractured ribs, "and the bullet went up towards the fractured ribs and came down to the stomach, punctur[ed] the stomach[,] and stayed in his intestines." (*Id.*)

Dr. Pavlou diagnosed Claimant with a "gunshot wound to the left upper abdomen, status post laparotomy[,] and repair of intestinal injuries. He also

---

[4] Claimant testified that he previously suffered a gunshot wound to his groin in 1997. (WCJ Decision, 6/25/2020, F.F. No. 4(p).)

diagnosed post-[]traumatic musculoligamentous strain and sprain of the lumbosacral spine." (WCJ Decision, 6/25/2020, F.F. No. 6(c).) Dr. Pavlou testified that Claimant was disabled from his preinjury job as a maintenance technician, as of April 10, 2019, due to his injuries, and continued to treat Claimant with physical therapy to strengthen his abdominal wall muscles and low back, along with pain management. (F.F. No. 6(c), (d), (e).) Dr. Pavlou opined, however, that Claimant could return to some kind of light-duty work in the future. (F.F. No. 6(f).)

Additionally, a January 6, 2020 statement from Dr. Pavlou was admitted into evidence. (WCJ Decision, 6/25/2020, F.F. No. 7; R.R. at 297a-98a.) Therein, Dr. Pavlou advised that due to the gunshot wound, Claimant has "persistent abdominal cramps and gastrointestinal issues." (R.R. at 297a.) Furthermore, when he fell to the ground, Claimant "sustained [a] lumbosacral spine, musculoligamentous injury and radiculopathy." (*Id.*) Dr. Pavlou stated that Claimant had an electromyography (EMG) done in October 2019, which showed an L4 radiculopathy.[5] (*Id.*) Claimant received an epidural to his lumbar spine, which provided some temporary relief. (*Id.*) Dr. Pavlou reiterated his belief that Claimant had not fully recovered from his injuries, but that, with continued treatments, recovery could be expected in the near future. (R.R. at 298a.)

In opposition to Claimant's claim petition, Employer and the UEGF presented the deposition testimony of Dr. Barry Snyder, who is board certified in orthopedic surgery. (WCJ Decision, 6/25/2020, F.F. No. 9.) Dr. Snyder performed an independent medical examination (IME) of Claimant on September 19, 2019, which was limited to Claimant's low back and lower extremities. (F.F. No. 9(a), (b).) Dr. Snyder diagnosed Claimant with two rib fractures, from which Dr. Snyder

---

[5] The EMG is not in evidence.

4

opined Claimant had fully recovered. (F.F. No. 9(c).) Dr. Snyder further diagnosed Claimant with preexisting lumbar disc degeneration at L5/S1, with preexisting radicular symptoms, which could have been transiently aggravated. (*Id.*) However, he saw no indication of ongoing radiculopathy relating to the work injury. (F.F. No. 9(d).) Also, if Claimant did suffer a lumbar sprain and strain when he fell, Dr. Snyder opined that Claimant had recovered from it. (F.F. No. 9(c).) As such, Dr. Snyder believed that Claimant was fully recovered from his work injuries and could return to work without restrictions. (F.F. No. 9(c), (d).)

Employer and the UEGF also presented the deposition testimony of Francis Rosato, M.D., who is board certified in general surgery. (WCJ Decision, 6/25/2020, F.F. No. 10.) Dr. Rosato conducted a physical examination of Claimant on September 9, 2019. (F.F. No. 10(a).) Dr. Rosato stated that Claimant sustained a gunshot wound to his abdomen, underwent an appropriate surgical repair, and was fully healed from that surgery. (F.F. No. 10(c).) Dr. Rosato found no objective findings that would support Claimant's subjective complaints of pain. (*Id.*) Dr. Rosato agreed that Claimant had a bullet fragment in his right hemiabdomen, but "opined that it was not uncommon to leave bullets in patients' abdomens and it should not cause any pain." (F.F. No. 10(d).) Further, he explained, the normal healing period for the surgery performed on Claimant was four to six weeks. (*Id.*) Dr. Rosato opined that Claimant had fully recovered from his work injury as of September 9, 2019, and could return to work without restrictions. (F.F. No. 10(c).)

On June 25, 2020, the WCJ circulated her decision and order. The WCJ found Claimant's testimony credible that he suffered a disabling work injury on April 10, 2019, while working for his Employer; however, the WCJ found Claimant's live testimony not credible with regard to his complaints of continuing

5

pain and ongoing disability. (WCJ Decision, 6/25/2020, F.F. Nos. 11-13.) The WCJ rejected Dr. Pavlou's testimony as not credible in its entirety, as the WCJ found that he was not qualified to render opinions on Claimant's injuries due to his not being a specialist in the areas affected by Claimant's injuries and because his opinions were based on Claimant's incredible complaints of ongoing symptoms. (F.F. No. 14.) The WCJ further found the testimony and opinions of Dr. Rosato and Dr. Snyder more credible and persuasive than Dr. Pavlou's, as they were specialists on surgical matters and in the areas related to Claimant's orthopedic injuries and also testified that Claimant's subjective complaints of pain were not substantiated by their objective findings. (F.F. Nos. 14-15.)

Based on the above facts, the WCJ concluded that Claimant met his burden of proving that he sustained a totally disabling work injury on April 10, 2019, while working for Employer, which consisted of

> a gunshot wound to his chest area/left abdominal quadrant post laparotomy; stomach laceration; fractures of the sixth and seventh ribs on his left side; internal injuries status post stomach surgery; a post-traumatic lumbosacral spine sprain/strain with symptoms into his lower extremities; and an aggravation of pre[]existing lumbar disc degeneration at L5/S1, with radiculopathy at L4[,]

and that Claimant had fully recovered from all of his injuries as of September 19, 2019. (WCJ Decision, 6/25/2020, F.F. Nos. 12, 16; Conclusions of Law (C.L.) No. 3.)[6] The WCJ further determined that Employer was primarily liable to Claimant for payment of lost wages, penalties, interest, medical benefits, and litigation costs, and that based on Employer's uninsured status, the UEGF was secondarily liable to

---

[6] As to Claimant's penalty petition, which is not at issue on appeal, the WCJ awarded Claimant a 50% penalty against Employer based on its failure to timely accept or deny his claim, as required by the Act. (WCJ Decision, 6/25/2020, F.F. No. 18 & C.L. No. 4.)

6

Claimant for the above payments should Employer default on its obligations. (C.L. Nos. 6-8.)[7] The WCJ also terminated Claimant's benefits effective September 19, 2019. (WCJ's Decision, 6/25/2020, C.L. No. 9.)

Claimant appealed to the Board, arguing that the WCJ's Findings of Fact Nos. 1 through 20 were not supported by substantial evidence or contained other errors, and Conclusions of Law Nos. 1 through 9 were in error, for the following reasons:

> The WCJ erred in terminating [] Claimant's workers' compensation benefits as of September 19, 2019. In Finding of Fact [No.] 12, the WCJ found that [] Claimant suffered a totally disabling work injury on April 10, 2019, while working for [E]mployer. The WCJ further found that [] Claimant's injuries were gunshot wound to his chest area/left abdominal quadrant post laparotomy; stomach laceration; fractures of the sixth and seventh ribs on his left side; internal injuries status post stomach surgery; a post-traumatic lumbosacral spine sprain/strain with symptoms into his lower extremities; and an aggravation of pre[]existing lumbar disc degeneration at L5/S1, with radiculopathy at L4. The testimony of [E]mployer's medical experts, Dr. Rosato and Dr. Snyder, do not support a finding or conclusion that [] Claimant fully recovered from his stomach laceration, internal injuries status post stomach surgery, a post[-]traumatic lumbosacral spine sprain/strain with symptoms into his lower extremities and an aggravation of pre[]existing lumbar disc degeneration at L5-S1 with radiculopathy at L4. The [WCJ's] Decision terminating [] Claimant's benefits must be reversed. [] Claimant should also be awarded ongoing total disability benefits since [E]mployer's medical evidence does not support a full recovery. The WCJ's Decision to deny [] Claimant ongoing wage loss and medical benefits despite his severe injuries is not supported by substantial competent evidence and should be reversed on appeal.

---

[7] The WCJ circulated an amended decision on June 30, 2020, in which she amended Conclusion of Law No. 8 (of her June 25, 2020 decision) by deleting the payment of interest as the UEGF's responsibility should Employer default on its payment obligations. (R.R. at 427a-30a.) She otherwise affirmed her June 25, 2020 decision.

7

(Certified Record "C.R." Item No. 13, at 2-3.) The Board evaluated Claimant's appeal as a claim that the WCJ's finding of full recovery was not based on substantial competent evidence. (Board Op., 4/1/2021, at 2.) The Board held that the record evidence supported the WCJ's findings that Claimant sustained a disabling work injury for a closed period of time. Because the Claimant did not meet his burden of proving an ongoing disability after September 19, 2019, the Board concluded that the WCJ properly terminated Claimant's benefits as of that date, and affirmed the WCJ's decision.

Claimant now petitions this Court for review of the Board's order. Claimant contends that the WCJ's decision to terminate his benefits is not supported by substantial and competent evidence of record because the evidence shows that Claimant's work-related L4 radiculopathy was not fully resolved as of September 19, 2019. Claimant further argues that the WCJ's decision is not reasoned because she failed to consider crucial medical evidence, *i.e.*, an EMG showing an L4 radiculopathy.

In a claim petition proceeding, the claimant bears the burden of establishing all of the elements necessary to support an award of workers' compensation benefits, including the existence of an injury and disability, and a causal relationship between the injury and the claimant's work. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999). The burden remains on the claimant to show that his work-related injury continues to cause disability throughout the pendency of the claim proceeding. *Somerset Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee)*, 650 A.2d 114, 119 (Pa. Cmwlth. 1994). The "WCJ is authorized, when considering a claim petition, to award compensation for a work-related injury, and, in addition, to terminate benefits as of

8

the date the disability ceased . . . if the claimant has not carried [his or her] burden of proof to establish a continuing disability." *Ohm v. Workmen's Comp. Appeal Bd. (Caloric Corp.)*, 663 A.2d 883, 886 (Pa. Cmwlth. 1995).

In his brief, Claimant acknowledges that the WCJ accepted that he sustained a work injury in the nature of an L4 radiculopathy. He claims, however, that the WCJ incorrectly determined that the L4 radiculopathy resolved as of September 19, 2019, because an EMG study done in October 2019 showed an L4 radiculopathy. Further, Claimant asserts that the WCJ's decision is not well-reasoned because she failed to address the October 19, 2019 EMG results.

The UEGF responds[8] that Dr. Pavlou's January 6, 2020 narrative report was admitted into evidence at the final hearing before the WCJ. The report does not contain an EMG study; rather, it merely contains a notation by Dr. Pavlou that an EMG study was done in October 2019, showing an L4 radiculopathy. The WCJ acknowledged the report and EMG study in Finding of Fact No. 7. However, the WCJ ultimately rejected the testimony of Dr. Pavlou and credited the testimony of Dr. Snyder that Claimant's preexisting radiculopathy had been aggravated by the work injury, but there was no longer any indication of an ongoing radiculopathy relating to the work injury. Additionally, the WCJ specifically noted Dr. Pavlou's report stating that an EMG study demonstrated an L4 radiculopathy. Thus, according to the UEGF, it was considered by the WCJ, and the decision was well-reasoned.

We begin by addressing *sua sponte* whether Claimant's first issue to this Court was properly raised before the Board. Pursuant to the Pennsylvania Rules

---

[8] On May 7, 2021, the UEGF filed a notice of intervention with the Court. Employer was precluded from filing a brief in this matter based on its failure to comply with this Court's October 5, 2021 order directing it to do so within 14 days.

of Appellate Procedure, this Court may review only those "questions raised before the government unit . . . ." Pa.R.A.P. 1551(a) (absent certain exceptions not applicable to this case). In order to preserve an issue for the Board's review, a claimant must provide, *inter alia*:

> A statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of the law which are alleged. General allegations which do not specifically bring to the attention of the Board the issues decided are insufficient.

34 Pa. Code § 111.11(a)(2). "In interpreting and applying this section, we have found that when a party fails to abide by the requirements of 34 Pa.[ ]Code § 111.11(a)(2) by raising an issue with the requisite specificity *in the appeal documents before the Board*, that party fails to preserve the issue under 34 Pa.[ ]Code § 111.11(a)(2)." *McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94, 101 (Pa. Cmwlth. 2006) (emphasis in original).[9]

Here, Claimant asserted in boilerplate language that Findings of Fact Nos. 1-20, *i.e.*, all of the WCJ's findings of fact, were not supported by substantial evidence or contained other errors, and that Conclusions of Law Nos. 1-9, *i.e.*, all of the WCJ's conclusions of law, were in error. (C.R. Item No. 13, at 2-3.) Claimant then alleged that the testimony of Employer's medical experts did "not support a finding or conclusion that [] Claimant fully recovered from his stomach laceration, internal injuries status post stomach surgery, a post[-]traumatic lumbosacral spine sprain/strain with symptoms into his lower extremities and an aggravation of

---

[9] In *McGaffin*, this Court, *sua sponte*, raised the issue of whether the claimant preserved the issue before the Court in her appeal to the Board.

10

pre[]existing lumbar disc degeneration at L5-S1 with radiculopathy at L4[,]" *i.e.*, almost all of his work-related injuries. (*Id.*)

In short, Claimant's appeal to the Board stated that all of the WCJ's findings of fact and conclusions of law were in error, and that Employer's and the UEGF's medical testimony failed to establish that Claimant fully recovered from most of his work-related injuries. As such, Claimant failed to specifically plead before the Board the specific issue raised first before this Court: whether the WCJ wrongly determined that the L4 radiculopathy resolved as of September 19, 2019, when Dr. Pavlou reported that an EMG taken in October 2019 showed an L4 radiculopathy. Because the issue was not specifically raised before the Board, it was not preserved for review by this Court. *See* Pa.R.A.P. 1551(a).[10]

While Claimant did not raise a specific challenge to the Board regarding his L4 radiculopathy and the EMG in his appeal, he did raise a general challenge to the WCJ's finding of full recovery as to all of his injuries. As such, the Board did address whether the WCJ's finding of full recovery was based on substantial and

---

[10] Even if we considered Claimant's issue to have been preserved by his general allegations, he would not prevail. Dr. Pavlou reported that Claimant had an L4 radiculopathy as of October 2019. (R.R. at 297a.) However, the WCJ accepted the medical testimony of Dr. Snyder, not Dr. Pavlou. (F.F. Nos. 14 & 15.) Dr. Snyder opined that Claimant had preexisting lumbar disc degeneration at the L5-S1 interspace, with preexisting radiculopathy symptoms. (Dr. Snyder Dep. at 38; R.R. at 248a.) Dr. Snyder believed Claimant could have sustained a work-related sprain and strain of the lumbar spine upon falling to the ground after being shot, and this could have aggravated Claimant's preexisting lumbar issues. (*Id.* at 39-40; R.R. at 249a-50a.) Dr. Snyder advised that a sprain and strain would normally resolve within six weeks, but with Claimant's preexisting lumbar issues, it might take three months. (*Id.*) Dr. Snyder examined Claimant five months after the fall and testified that if there ever was a sprain or strain, it had resolved. (*Id.*) Dr. Snyder specifically expressed there was no showing of an ongoing radiculopathy *relating to the work incident*. (*Id.* at 41; R.R. at 251a.) Thus, it is irrelevant whether Claimant had radiculopathy symptoms in October of 2019; his radiculopathy symptoms were preexisting and would be expected to continue.

11

competent evidence of record. The Board explained that Claimant had the burden of proving a work-related disability and its duration. Because the WCJ found that the disabling injuries had resolved, it was proper to award benefits for a closed period and thereafter order termination. Specifically, the WCJ based her decision on the credible testimony of Dr. Snyder and Dr. Rosato, both of whom opined that objective medical evidence did not support Claimant's complaints, and rejected Dr. Pavlou's opinion[11] primarily because it was based on Claimant's discredited complaints. Finding that the WCJ's decision was based on substantial and competent evidence of record, the Board denied Claimant's appeal.

We agree with the Board. It is well settled that the WCJ, as the ultimate factfinder, is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Milner v. Workers' Comp. Appeal Bd. (Main Line Endoscopy Ctr.)*, 995 A.2d 492, 496 (Pa. Cmwlth. 2010). Further, determinations of credibility and evidentiary weight are within the WCJ's exclusive province. *Ward v. Workers' Comp. Appeal Bd. (City of Phila.)*, 966 A.2d 1159, 1164 (Pa. Cmwlth. 2009). Viewing the evidence in the light most favorable to Employer as the party that prevailed before the WCJ,[12] particularly the testimony of Dr. Snyder, we conclude that the WCJ's decision was based on substantial and competent evidence of record.

Second, Claimant argues that the WCJ's decision is not reasoned because she failed to consider the EMG showing L4 radiculopathy.[13] Before the

---

[11] Dr. Pavlou also treated Claimant for gastrointestinal issues. However, the WCJ did not find these issues to be related to his work.

[12] *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

[13] Section 422(a) of the Act provides:
**(Footnote continued on next page…)**

12

Board, Claimant did not assert that the WCJ's decision was not well-reasoned or that the WCJ failed to consider the EMG showing the L4 radiculopathy. (C.R. Item No. 13, at 2-3.) Thus, Claimant's second issue was not preserved for review by this Court. *See* Pa.R.A.P. 1551(a). Even if considered, this argument lacks merit. The WCJ, as described above, fully explained her reasons for accepting the testimony of Dr. Snyder over that of Dr. Pavlou and, as noted in footnote 10, Dr. Snyder explained that Claimant's radiculopathy symptoms were no longer work related by the time of the EMG.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce Sephes,                                    :
                          Petitioner              :
                                                 :
          v.                                     :    No. 430 C.D. 2021
                                                 :
Nationwide Housing Management                    :
and Uninsured Employers Guaranty                 :
Fund (Workers' Compensation Appeal               :
Board),                                          :
                          Respondent             :

# **O R D E R**

AND NOW, this 1st day of June, 2022, the Workers' Compensation Appeal Board's April 1, 2021 order is AFFIRMED.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita